[Civ. No. 43613. Second Dist., Div. Five. July 11, 1974.]

EVEREARDO CASTRO, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
THE PEOPLE, Real Party In Interest.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., and Donald F. Roeschke, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**KAUS, P. J.**—Evereardo Castro (defendant) was sentenced to prison in Santa Barbara County on January 5, 1972. He petitions us for "an out-of-time and/or belated appeal." His application is accompanied by a declaration to the effect that at the time he was sentenced the court did not advise him of his right to appeal as mandated by California Rules of Court, rule 250, which had been in effect for about a week.[1] He also claims that the

---

[1]California Rules of Court rule 250, which went into effect on January 1, 1972, read then as follows: "After imposing sentence . . . in a criminal case upon conviction after trial, the court shall advise the defendant of his right to appeal from the judgment, of the necessary steps and time for taking an appeal and of the right of an indigent defendant to have counsel appointed by the reviewing court. A reporter's transcript of the proceedings required by this rule shall be forthwith prepared and certified by the reporter and filed with the clerk."

deputy public defender who represented him at the time did not inform him of his right to appeal and that he did not learn of any such right until "recently" when a fellow inmate told him about it.[2] The petition was filed with this court on January 24, 1974.

In appropriate responses the People admit that the trial court did not comply with rule 250. They inform us that the public defender who represented defendant at the trial claims the attorney-client privilege on the question whether he told defendant about his right to appeal: he is, however, willing to reveal the information if ordered to do so by this court. On the issue—if it be an issue—whether defendant knew of his right to appeal, the People point to defendant's many contacts with courts and law enforcement agencies, as well as to his years in state prison.[3] Admittedly, the record contains no affirmative evidence that defendant knew of his right to appeal. The People's position is simply that under all of the circumstances defendant "must have known."

## Discussion

*In re Benoit,* 10 Cal.3d 72 [109 Cal.Rptr. 785, 514 P.2d 97], comprehensively reviews the history of California's attempts to accommodate two sometimes divergent objectives: The first is the establishment of the finality of convictions with reasonable certainty and promptness. Definite time limits for the taking of appeals, interpreted as "jurisdictional," clearly promote this end; but slavish adherence to such deadlines often violates more basic justice. Experience has shown that persons who have just been convicted of crime are among the most ignorant of litigants, less able than most to communicate with their legal advisors who often fail to perform the most elementary duties one would expect of them. Until the changes in the California Rules of Court, which went into effect on January 1, 1972, our law tried to reconcile these conflicting objectives by the provision in rule 31(a) which permitted appellate courts to permit late filings under certain circumstances. (*People* v. *Acosta,* 71 Cal.2d 683 [78 Cal.Rptr. 864, 456 P.2d 136] and cases cited.)

---

[2]For reasons which will become apparent (see fn. 13, *infra*), we temporarily lay aside defendant's claim of trial counsel ineffectiveness.

[3]It appears that after many other relatively minor brushes with the law, defendant was convicted of robbery in 1969. His present confinement is the result of a conviction for assault with intent to commit robbery (Pen. Code, § 220), allegedly committed a few days after he was paroled on the 1969 conviction, from which no appeal had been taken.

The rule changes effective January 1, 1972, extended the time within which to file a notice of appeal from 10 to 60 days, eliminated from rule 31(a) the provision allowing applications for relief from late filing, and imposed upon the sentencing judge the requirement of rule 250. The 1972 Annual Report of the Administrative Office of the California Courts, quoted in *In re Benoit, supra,* 10 Cal.3d 72, 84, footnote 12, states sanguinely: "The required advice and transcripts will serve to rebut any future claim of ignorance by defendants."[4]

While this report was undoubtedly correct in predicting the effect of compliance with rule 250, it does not tell us anything about the Judicial Council's intent with respect to the case where ignorance is claimed and cannot be rebutted by pointing to compliance with rule 250.[5]

The People's first line of defense to this application is that "the trial court's failure to advise [defendant] . . . of his appeal rights . . . did not expand the 60-day period . . . in which a notice of appeal must be filed."

█ If thereby the People intend to submit that it was the intention of the framers of rule 250 that lack of compliance could not become the basis for judicial relief from the 60-day limitation imposed by rule 31(a), they are mistaken.

First, the very wording of the quoted report—"will serve to rebut any future claim of ignorance"—assumes the existence of a forum in which such a claim can be asserted.

Second, the cases are against them. Two decisions from the Third Appellate District point the way. The first is *People* v. *Serrano,* 33 Cal. App.3d 331 [109 Cal.Rptr. 30]. Serrano was sentenced in January 1972. We do not know whether he was advised as per rule 250. He obviously knew of his right to appeal because in reliance on his attorney's promise

[4]Similar optimism was expressed by the United States Supreme Court in *Rodriquez* v. *United States,* 395 U.S. 327, 331, footnote 3 [23 L.Ed.2d 340, 345, 89 S.Ct. 1715], where it said with respect to the recently enacted rule 32(a)(2) "[t]he problem of determining whether to give notice to a person represented at trial, but who may not be represented on appeal, will therefore not recur."

*Benoit,* itself, involved a late appeal filed after a judgment pronounced in February 1972. No question concerning the effect of failing to comply with rule 250 was involved since the trial court had advised the defendant in accordance with the rule. A late appeal was permitted on the doctrine of "constructive filing."

[5]It is undeniable that rule 250 works, as envisioned, in the vast majority of cases. The fact that this opinion, filed 30 months after the rule went into effect, is the first which discusses the effect of a failure to comply, is of some significance. Note also that defendant was sentenced only a few days after the rule became operative.

to appeal, he did nothing for more than 60 days. New attorneys became active on his behalf after the 60-day deadline had passed, and matters proceeded promptly thereafter. An application for relief was eventually filed with the Court of Appeal. The Attorney General's argument that the 1972 amendments to the California Rules of Court deprived the Court of Appeal of power to grant leave to file a late appeal was answered with the statement to the effect that the elimination of the ameliorative provisions from rule 31(a) "cannot deprive the appellate courts of their inherent duty to protect constitutional rights." (*People* v. *Serrano, supra,* 33 Cal. App.3d at p. 336.) It should be noted, however, that the constitutional right of which the court spoke appears to have been the right to counsel, rather than any constitutional right to appeal.[6] *Serrano,* of course, correctly anticipated the result of *In re Benoit, supra,* 10 Cal.3d 72, even if it reached it by a slightly different chain of reasoning. ■ In any event, both *Benoit* and *Serrano* stand for the proposition that the 1972 amendments did not deprive the courts of the power to mandate the processing of apparently late appeals under proper circumstances.

More directly in point than *Serrano* is *In re Arthur N.,* 36 Cal.App.3d 935 [112 Cal.Rptr. 89]. In May 1972 Arthur N. had been found to be a person described by section 602 of the Welfare and Institutions Code. He was not informed of his right to appeal.[7] On these facts he successfully petitioned the appellate court for an order permitting him to file a late notice of appeal almost exactly a year later.

The articulated basis for the court's action was its holding that rule 250, which applied only to criminal cases, deprived Arthur N. of equal protection of the laws. Nevertheless, the fact that it granted relief almost necessarily implies that it assumed—as a matter of course—that had Arthur N. been a convicted, unadvised criminal, he would have been entitled to judicial relief.

In interpreting the Judicial Council's intentions we are also aided by the fact that rule 250 is "borrowed" almost literally from 32(a)(2) of the Federal Rules of Criminal Procedure which has been in effect in its present form since July 1, 1966.[8] A considerable body of federal law

---

[6]The court cited *People* v. *Tucker,* 61 Cal.2d 828, 832 [40 Cal.Rptr. 609, 395 P.2d 449], where the Supreme Court said: "If a defendant asks his attorney to appeal, and the latter agrees but fails to do so, even if his lawyer feels such an appeal would lack merit, the defendant is entitled to protection."

[7]Rule 251 which mandates such advice in juvenile court cases did not go into effect until July 1, 1973.

[8]The rule reads as follows: "After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to

concerning the consequences of noncompliance with rule 32(a)(2) has developed. Although the circuits are not in agreement concerning the effect to be given a failure to comply, it is clear that an unadvised defendant who is ignorant of the rights of which he was not informed, is entitled to some relief in every circuit in which the question has arisen.

The majority of federal cases which have considered the problem hold, in effect, that if rule 32(a)(2) is violated, the defendant is automatically entitled to a late appeal. Thus, in *United States* v. *Benthien* (1st Cir. 1970) 434 F.2d 1031, 1032, the court held that a defendant who had not been advised of his right to appeal was automatically entitled to relief under 28 United States Codes, section 2255, and that such relief was available "without regard to whether or not the defendant had obtained knowledge of his rights from some other source." The relief granted was simply to restore the defendant's right of appeal and to direct the district court clerk to file the necessary notice of appeal. The same result was reached, less directly, in *Paige* v. *United States* (4th Cir. 1971) 443 F.2d 781, 782, where it was held that failure to comply with rule 32(a)(2) "requires a remand for resentencing and reinstatement of the right to appeal." (See also *Nance* v. *United States* (7th Cir. 1970) 422 F.2d 590; *United States* v. *Smith* (6th Cir. 1967) 387 F.2d 268, 270-271; *Hannigan* v. *United States* (10th Cir. 1965) 341 F.2d 587.) An extreme case was *Kirk* v. *United States* (7th Cir. 1971) 447 F.2d 749, where a defendant, not advised under rule 32(a)(2), nevertheless filed a notice of appeal through counsel. The appeal was later dismissed when no record was filed. The court refused to assume that the abandonment of the appeal was "intelligent and voluntary." It interpreted *Rodriquez* v. *United States, supra,* 395 U.S. 327, 331-332 [23 L.Ed.2d 340, 344-345], to preclude a factual inquiry into the reasons for the abandonment of the appeal, and ordered the reimposition of sentence with appropriate advice "so that there will be an opportunity for a new appeal." (*Ibid.,* p. 751.)

Defendant, of course, urges us to follow this line of federal decisions. As noted, however, the circuits are not unanimous on the procedures to be followed if a trial court fails to comply with rule 32(a)(2). Thus, in *Chapman* v. *United States* (5th Cir. 1972) 469 F.2d 634, 637, the court expressly refused to follow *Kirk* in an identical situation. Several cases collected in *Hoskins* v. *United States* (3d Cir. 1972) 462 F.2d 271, 274, hold that a failure to comply with rule 32(a)(2) at the time of sentencing

---

appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant." (Italics in original.)

does not automatically entitle the defendant to a late appeal, at least "[w]here notice of the appeal rights is placed on the record in a formal judicial proceeding prior to sentencing and the interval between the proceeding and the sentencing is of a brief enough duration to ensure beyond a reasonable doubt that the notification will be fresh in the mind of the defendant at the time of the sentencing . . . ." (See also *Johnson* v. *United States* (8th Cir. 1972) 453 F.2d 1314.)

■ We are not persuaded that the Judicial Council intended that we are to follow the strict line of federal cases which seemingly would have the effect of automatically entitling an unadvised defendant to a late appeal, however much aware he may have been of his rights, or for however long he may have slept on them after becoming aware. Again we point to the language of the 1972 Annual Report quoted in *In re Benoit, supra,* 10 Cal.3d 72, 84, footnote 12: The writer's expectation that compliance with rule 250 "will serve to rebut" claims of ignorance does not intimate that nothing but such compliance will do the job.

■ In summary, it is our view that on a proper allegation of ignorance of his right to appeal, a convicted defendant is entitled to a hearing in an appropriate forum.[9] It seems clear, however, that the trial court's failure to comply with rule 250 should put the burden of disproving such ignorance on the People.

This does not mean that a convicted defendant should be entitled to have the People shoulder that burden on a vague, ambiguous allegation of ignorance,[10] such as the one contained in defendant's declaration. All he says is that he was not aware of his right to appeal at the time of sentence, that his counsel did not inform him of that right and that he learned of it "recently."[11] While it probably is too much to ask that an applicant for relief state the time of his loss of ignorance with the precision of a diarist, such studied ambiguity will not suffice. ■ "Recently" is a relative term, whose meaning depends on the context in which it is employed. (*United States* v. *Wolfenbarger* (6th Cir. 1970) 426 F.2d 992,

---

[9]In so holding we do not intimate that the principle of waiver, applied in *In re Anderson,* 6 Cal.3d 288, 295-297 [98 Cal.Rptr. 825, 491 P.2d 409], which requires some diligence after termination of ignorance or other disability, is not available to the People.

[10]Fairness and policy sometimes dictate that the burden of alleging certain facts and the burden of proving them be allocated to different parties. (*Morris* v. *Williams,* 67 Cal.2d 733, 760 [63 Cal.Rptr. 689, 433 P.2d 697].) This is such a case.

[11]The application was prepared by defendant in propria persona with the assistance of a fellow inmate who has also furnished us with a worthless declaration of his own. Counsel who now appears of record in this matter was later appointed by us.

995.) Could defendant be prosecuted for perjury if he learned of his rights in January 1973? In the context of a prison term with a 20-year maximum, 1 year may seem a very short time indeed. Yet, clearly a frank allegation that defendant did nothing about asserting his rights for a year without explaining the reason for his inactivity, might enable the People to argue that he had waived his right to appeal as a matter of law.[12]

■■■ The allegation in defendant's application being insufficient, it is denied without prejudice.[13]

Ashby, J., and Loring, J.,* concurred.

On August 7, 1974, the opinion was modified to read as printed above.

---

[12]Without particularly relying on the vagueness of defendant's declaration, the People argue that the two-year delay, viewed in the light of defendant's criminal background, proves conclusively, on the face of his application, that he knew of his rights all along or, alternatively, that he has known of them long enough to have waived them as a matter of law. On the first point we can only echo the statement of the court in *Davis* v. *United States* (6th Cir. 1972) 464 F.2d 1009, 1014: "This case demonstrates the fallacy of relying upon a defendant's supposed knowledge for finding a waiver. The previous criminal experience of a defendant is not a factual springboard from which courts may perfunctorily catapult to the conclusion that the defendant possesses the requisite knowledge to prosecute his appeal within the narrow confines of the federal rules." We need not decide, however, whether after a hearing, a trier of fact could find that the People have discharged their initial burden of going forward (Evid. Code, § 550) by appropriate inferences which may be drawn from an examination of defendant's background. The question of waiver cannot possibly be decided in favor of the People until the time when defendant started to sleep on known rights is properly established.

[13]Defendant's claim of trial counsel dereliction in failing to inform him of his right to appeal may be disposed of on identical grounds. Assuming that counsel was "ineffective" in failing to inform defendant of his rights (cf. *Sanders* v. *Craven* (9th Cir. 1973) 488 F.2d 478) no relief on that basis can be granted unless defendant affirmatively alleges that by so informing him counsel would have told him something he did not already know.

*Assigned by the Chairman of the Judicial Council.