[Nos. D008057, D008269. Fourth Dist., Div. One. Feb. 28, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT DOUGLAS SNYDER, Defendant and Appellant.

COUNSEL

Valerie Newton, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Louis R. Hanoian and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FROEHLICH, J.**—Robert Douglas Snyder appeals from the judgment of conviction in case number CRN11888 (the drug counts). Snyder also appeals from the sentence imposed in case number CR87461 (the weapons count) following his guilty plea. The cases have been consolidated for purposes of appeal. With the concurrence of Acting Presiding Justice Work, the judgment based on the drug convictions is reversed and the matter is

remanded for new trial, while the judgment based on the weapons conviction is reversed solely for resentencing. Justice Benke dissents from these reversals. A majority created by the concurrence of Justice Benke concludes the People should be accorded a new 60-day period within which to file an appeal from the trial court order granting new trial which is thus reinstated. Acting Presiding Justice Work dissents from this extraordinary resurrection of appellate rights.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Drug Charges*

On December 22, 1986, at approximately 7:30 p.m., Officer Armentano was dispatched to a residence in Escondido to respond to a shooting incident. Upon entering the residence the officer spotted a seriously wounded woman, apparently suffering from a gunshot wound to the head, lying on an upstairs "loft" area overlooking the main living area of the two-story residence. The officer conducted a brief "sweep search" of the residence to check for the possible presence of individuals other than the victim and the three men found at the residence on his arrival. He then secured the premises by moving those three men into the kitchen area.

A few minutes after Armentano had arrived, Sergeant Burkett arrived to photograph the crime scene and was briefed by Armentano on the facts of the incident and the results of the sweep search. Burkett proceeded upstairs to where the victim had been found in order to photograph the scene. He noted a trail of blood leading into an open doorway of a nearby bedroom. He followed the trail just far enough into the bedroom to determine that the trail stopped a few feet inside the doorway. While inside the doorway, he noticed various chemicals, glassware, scales and containers which he associated with and thought represented a clandestine lab for the manufacture of illegal drugs.

Based on his plain-view observations, Burkett called Detective Milks of the Special Investigations Narcotics Unit. Detective Milks arrived at approximately 8:10 p.m. and proceeded to the upstairs bedroom. He spotted the chemicals, glassware and equipment, which he also associated with a manufacturing operation for illegal narcotics, and then took a small scraping of some residue from a jar and tested it with a "Nar-Kit Junior Test Kit." After the test yielded a positive reaction for amphetamine, Milks obtained a telephonic search warrant and (armed with this warrant) proceeded to search the premises.

The search of the bedroom, bedroom closet and garage yielded solvents, substances, equipment, recipes and other literature useful in the manufacture of methamphetamine. The search also produced a gallon of liquid containing methamphetamine, two quart-size jars containing a substance determined to be unfinished methamphetamine, and a glass jar with a residue determined to be methamphetamine. Snyder admitted that he resided in the bedroom which yielded the majority of items seized.

On April 7, 1987, Snyder was charged by information with one count of violating Health and Safety Code section 11378 (possession of controlled substances for sale), one count of violating Health and Safety Code section 11377 (possession of controlled substances), one count of violating Health and Safety Code section 11379.6, subdivision (a) (manufacture of methamphetamine), and one count of violating Penal Code section 12220 (possession of a machine gun).[1] Snyder's pretrial motion to suppress the evidence, based on the alleged unlawful "search" of the premises by the officers before the warrant was issued, was denied.

On August 17, 1987, the date set for trial, the People filed an amended information, adding an allegation (in connection with the manufacturing count) that the volume and weight of the methamphetamine was more than three gallons of liquid or more than one pound of solid within the meaning of the enhancement provisions of Health and Safety Code section 11379.8, subdivision (a) (1). Following jury trial Snyder was convicted on all counts, and the jury returned a true finding on the volume/weight enhancement.

■■■ Snyder timely moved for a new trial, arguing that the volume/weight enhancement was improperly charged under ex post facto principles.[2] He further argued that extensive expert testimony, directed *solely* at proving the enhancement, had been erroneously introduced because it was irrelevant to the other counts and was highly prejudicial to defendant's case. The motion, originally scheduled for hearing October 21, 1987, was continued for two weeks to allow the People additional time to respond. The People failed to file written opposition, but nevertheless appeared, argued there was no prejudice, and orally sought to oppose the motion for new trial. The court, concluding there was prejudice from the erroneously admitted evidence, granted the motion for new trial.

---

[1] The April 7, 1987, information also charged Snyder with one count of violating Health and Safety Code section 11379 (selling or offering to sell a controlled substance). However, this count was subsequently dismissed on the People's motion.

[2] The enhancement statute, Health and Safety Code section 11379.8, was amended in 1986 to add methamphetamine as one of the controlled substances to which that enhancement applied. (See Stats. 1986, ch. 80, § 3.) Because it was not designated as emergency legislation, it became effective January 1, 1987, *after* the date the charged offense was committed, precluding its application on ex post facto grounds.

The People subsequently moved for reconsideration of the order granting a new trial, which Snyder opposed. The trial court granted the motion. It then reexamined the issue of whether Snyder was prejudiced by the admission of the expert testimony on the volume/weight of the methamphetamine and ultimately concluded there was no prejudice, vacating its previous order and entering a new order denying Snyder's motion for a new trial. Snyder was subsequently sentenced on the drug charges to a five-year term on count three (designated as the principal count), and to two-year terms on each of the remaining three counts to be served concurrently with the principal count.

### B. *The Weapons Charge*

On April 6, 1987, Snyder was arrested for possession of a sawed-off shotgun. Snyder pled guilty, but sentencing was continued until after the pending drug charges were adjudicated, since the results from the drug charges case were apparently pivotal to the probation officer's decision on whether to recommend probation or prison on the weapons charge. After Snyder's motion for new trial was denied following reconsideration, the probation officer recommended, and the court imposed, a two-year midterm on the weapons charge, to be served concurrently with the prison term imposed on the drug charges.

### C. *Contentions On Appeal*

Snyder first urges that his conviction on the drug charges should be reversed because he was denied effective assistance of counsel. Alternatively, Snyder urges he should be granted a new trial on the drug charges, based on the court's original order granting such a new trial, arguing the trial court erred by reconsidering its original order and entering a subsequent order denying a new trial. Finally, Snyder argues that if a retrial is ordered on the drug charges, sentencing on the weapons charge should be remanded because the sentencing choice was intimately tied to the convictions on the drug charges.

## II

### DISCUSSION

### A. *Snyder Was Not Denied Effective Assistance of Counsel*

Snyder first contends he was denied effective assistance of counsel because his attorney should have challenged, but failed to challenge, the

prewarrant "search" conducted by Milks,[3] upon which the search warrant was ultimately issued. The burden is on Snyder affirmatively to show that his trial counsel failed to act with reasonable competence and diligence and that counsel's negligence resulted in the withdrawal of a potentially meritorious defense. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) It is the latter prong which is fatal to Snyder's contention, since a motion to suppress on the grounds that Milks's search was unreasonable would have been fruitless.

The legality of the initial searches by Armentano and Burkett are unchallenged on appeal. While photographing evidence at the crime scene, Burkett followed a trail of blood to the doorway, from which he made the plain-view observation of vials, glassware and chemical containers associated with clandestine laboratories, and also observed residues of what appeared to be methamphetamine. Burkett called in Milks, who arrived at the scene 20 minutes later, made the same plain-view observations from the same vantage point as had Burkett, reached the same tentative conclusion as Burkett regarding the nature of the residues, and then conducted a test to verify that the residue was indeed methamphetamine.

Although Snyder argues Milks's observations constituted an unreasonable search, strongly analogous authorities are to the contrary. In both *People* v. *Plane* (1969) 274 Cal.App.2d 1 [78 Cal.Rptr. 528], and more recently in *People* v. *Duncan* (1986) 42 Cal.3d 91 [227 Cal.Rptr. 654, 720 P.2d 2], similar challenges to a second officer's observations as "unreasonable searches" were rejected. In both cases the first officer made plain-view observations of suspected felonious conduct and then called in a second officer to verify or invalidate his suspicions of the illegal nature of the material he observed. Both courts concluded that where, as here, the second officer's observations are made at a time during which the first officer's presence at the scene (and plain-view observations therefrom) is justified, the second officer's observations are not an unreasonable search because "[t]he second officer's entry went no further than that of the first officer, and was meant only to interpret what the first officer had already seen. The second officer's entry was thus a minimal additional intrusion on the defendant's privacy." (*Duncan, supra*, 42 Cal.3d at p. 99; see also *People* v. *Plane, supra*, 274 Cal.App.2d at pp. 5-6.)

Based on *Duncan* and *Plane*, a motion to suppress Milks's observations and its fruits would have had little chance of success, and trial counsel's

---

[3] Snyder also argues trial counsel was ineffective because counsel only challenged the search pursuant to the warrant, placing the burden to show unreasonableness on Snyder and improperly relieving the People of their burden to show the prewarrant search was reasonable. However, our review indicates all parties understood that Snyder was challenging the prewarrant search, and the court properly placed the burden of proof upon the People to show its reasonableness.

failure to pursue an apparently fruitless motion did not deprive Snyder of effective assistance of counsel. (*In re Lower* (1979) 100 Cal.App.3d 144, 149, fn. 3 [161 Cal.Rptr. 24].)

B. *The Trial Court Erred in Reconsidering and Vacating Its Previous Order Granting Snyder's Motion for New Trial*

Following his conviction on the drug charges, Snyder moved for a new trial, arguing that prejudicial testimony had been erroneously admitted.[4] The hearing on Snyder's motion was continued for two weeks to allow the People an opportunity to prepare opposition to the motion. At the continued hearing the court noted the People had filed no written opposition to the motion, and concluded their failure to file opposition constituted acquiescence in defendant's motion. The court denied the People an opportunity to argue orally the issue of prejudice and, based on defendant's motion and the absence of written opposition, found prejudice and granted a new trial.

The People promptly sought reconsideration of the order granting new trial, arguing there is no statute or rule of court requiring written opposition to a motion. The People further argued that the court erred in refusing to allow the People an opportunity to oppose orally the motion, and that it further erred by failing independently to examine and reweigh the evidence before reaching its decision. Over Snyder's opposition the court granted the motion for reconsideration based on excusable neglect under Code of Civil Procedure section 473, vacated its previous order granting a new trial, and (following additional briefing) concluded the testimony of the expert was not sufficiently prejudicial to warrant a new trial. Accordingly, the court entered an order striking the enhancement, and thereafter denied the motion for new trial.

Snyder contends the trial court was without authority to reconsider its previous order granting a new trial. We agree. ▇▇▇ It is well established that subject to limited exceptions not applicable here,[5] " ' " '[o]nce a motion

---

[4] Snyder correctly contended that the weight/volume enhancement was improperly charged in the information, based on ex post facto principles. Snyder argued that extensive expert testimony concerning the makeup and weights of various chemicals seized, principally directed at and relevant to the enhancement issues, should not have been admitted and had a necessarily prejudicial impact on the jury's consideration of the other charges, such as the manufacturing and possession for sale counts.

[5] An order on a motion for new trial may be reconsidered (1) where the ruling is immediately reconsidered before it has been fixed by entry in the minutes and before any further proceedings have transpired (*People* v. *Hensel* (1965) 233 Cal.App.2d 834 [43 Cal.Rptr. 865]); (2) in a furcated trial, where certain policy considerations render the general rule inapplicable (see *People* v. *Risenhoover* (1966) 240 Cal.App.2d 233, 234-236 [49 Cal.Rptr. 526]); or (3) where the order is entered inadvertently or prematurely (*People* v. *Martin* (1926) 199 Cal. 240, 242 [248 P. 908]). A fourth "exception," the vitality of which remains untested, was

for a new trial has been ruled upon in a criminal case and an order made either granting or denying such application . . . the court is without authority to entertain a subsequent motion the object of which is to change or vacate its former order.' " ' [Citations.]" (*People v. Lindsey* (1969) 275 Cal.App.2d 340, 343 [79 Cal.Rptr. 880].) The California Supreme Court has consistently reached the same conclusion (see, e.g., *In re Levi* (1952) 39 Cal.2d 41, 45 [244 P.2d 403]; *People v. Walker* (1904) 142 Cal. 90, 92 [75 P. 658]; *People v. Fice* (1893) 97 Cal. 459, 460 [32 P. 531]), and the continuing vitality of the "no jurisdiction to reconsider order on new trial motion" rule was recently reaffirmed by one appellate court. (See *People v. Hernandez* (1988) 199 Cal.App.3d 768, 771-773 [245 Cal.Rptr. 156].) The proper remedy for the aggrieved party is to appeal, not to seek reconsideration. (See *People v. Collins* (1950) 97 Cal.App.2d 552, 554-555 [218 P.2d 87]; *People v. Center* (1882) 61 Cal. 191, 194.)

■ The People argue the so-called "*Levi/Lindsey rule*" should not be applied to this case, for two reasons. First, the People argue that the first order was a "nullity," since the court failed to perform its duty independently to reweigh the evidence, and also failed to provide the People with their due process right to be heard on the merits. Because the order was a "nullity," continues the argument, the subsequent hearing was in reality the first order, rather than a reconsideration of a prior order. We disagree. While the conduct cited by the People may well have been erroneous, and perhaps constituted an abuse of discretion justifying reversal, we are unaware of any authority holding that an erroneous ruling a fortiori renders the order wholly nugatory. That is, while the first order may have been reversible, it was not void *ab initio.*

The People alternatively urge that we follow *People v. Stewart, supra,* 202 Cal.App.3d 759, which "reexamined" the *Levi/Lindsey* rule and concluded the rule against reconsidering orders on new trial motions is *directory* rather than jurisdictional. Viewing the *Levi/Lindsey* rule as merely directory, the People contend the trial court had discretion to reconsider its previous ruling. We respectfully disagree with the *Stewart* court,[6] because its reason-

---

recently created to permit a new trial motion to be renewed where the original motion by defendant was denied and the second motion urges defendant had received ineffective assistance of counsel in connection with the first motion. (See *People v. Stewart* (1988) 202 Cal.App.3d 759, 763 [248 Cal.Rptr. 907].) While we question the reasoning of *Stewart* (see discussion *infra* at pp. 490-491), we do not necessarily disagree with the utility of the "exception" created by *Stewart.*

[6] To the extent *Stewart* only carves a narrow exception to the general *Levi/Lindsey* jurisdictional rule, the *Stewart* exception may well strike an appropriate balance between policies and principles underlying *Levi/Lindsey* and the policies and principles outlined by the Supreme Court in *People v. Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 659 P.2d 1144]. A policy fostered by *Levi/Lindsey* includes the promotion of judicial economy: It prohibits

ing appears inconsistent with controlling Supreme Court precedent. While *Stewart* dismissed the "jurisdictional" language in *Levi* as mere dictum (see *People* v. *Stewart, supra,* 202 Cal.App.3d at p. 762), the *Stewart* court overlooked numerous earlier Supreme Court precedents in which the "jurisdictional" language was *not* dictum. (See *People* v. *Walker, supra,* 142 Cal. 90, 92; *People* v. *Fice, supra,* 97 Cal. 459, 460; and *People* v. *Center, supra,* 61 Cal. 191, 194.) Thus, even if *Stewart* correctly characterized the language in *Levi* as dictum, the earlier Supreme Court holdings from which *Levi* sprang remain binding upon our court.

Because we are bound by the decisions of our Supreme Court (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), we conclude the trial court's order granting a new trial exhausted its authority on that issue, and the People's remedy was to pursue the appellate rights provided by statute (see Pen. Code, § 1238, subd. (a) (3)) rather than seek to vacate the previously entered order.

### C. *The People May Appeal From the Order Granting New Trial*

The net effect of our opinion is to reinstate the original order granting Snyder a new trial because the trial court acted in excess of its jurisdiction when it purported to reconsider its original ruling. However, the People should not be unfairly deprived of their right to prosecute an appeal from the original order granting a new trial. Although no appeal was taken from the original ruling, we conclude we are empowered to reinstate the People's appellate rights under the doctrine of "constructive filing" as amplified in *People* v. *Martin* (1963) 60 Cal.2d 615 [35 Cal.Rptr. 769, 387 P.2d 585] and *People* v. *Hales* (1966) 244 Cal.App.2d 507 [53 Cal.Rptr. 161].

 The doctrine of "constructive filing" permits, under very limited and unusual circumstances, an appeal to be prosecuted even though it was not filed within the normally jurisdictional 60-day time limit. This ameliorative doctrine springs from the recognition that delayed filings should be permitted where "slavish adherence to such deadlines . . . [would] violate[ ]

---

repetitive new trial motions which could become "interminable." (*People* v. *Martin, supra,* 199 Cal. at p. 242.) A countervailing interest, however, was expressed in *Fosselman.* The Supreme Court directed trial courts to determine, on motion for new trial where possible, whether a defendant's constitutional right to effective counsel had been violated. The *Fosselman* court recognized the trial court was the preferred decisionmaker on this issue, both because the trial court had actually observed counsel's trial performance and because judicial economy would be promoted by avoiding unnecessary appellate review or habeas corpus proceedings. (33 Cal.3d at pp. 582-583.) *Stewart* held that an exception to the general *Levi/Lindsey* rule, accommodating the *Fosselman* directives, should be permitted since both shared the common interest of fostering judicial economy. (*People* v. *Stewart, supra,* 202 Cal.App.3d at p. 763.)

more basic justice" (*Castro* v. *Superior Court* (1974) 40 Cal.App.3d 614, 617 [115 Cal. Rptr. 312]), and where the cause of the delayed filing was not principally attributable to the fault of the appellants. (*In re Benoit* (1973) 10 Cal.3d 72, 86 [109 Cal.Rptr. 785, 514 P.2d 97].)

Snyder argues the "constructive filing" doctrine may not be applied to an appeal *by the People,* contending the doctrine was developed solely for the benefit of, and is only applicable to, incarcerated defendants who fail to perfect their appeal because of the fault of others (usually state agents). While these factors are "generally" found in constructive filing cases (*In re Benoit, supra,* 10 Cal.3d 72, 86), neither "incarceration" nor "fault of others" is an absolute prerequisite to its application. In *People* v. *Martin, supra,* 60 Cal.2d 615, there was no indication that defendant's failure timely to file an appeal resulted from his incarceration, or even that he was jailed at the relevant times. And in *Benoit* the "fault" was attributable to appellant's own attorneys, not to state agents or third parties; nevertheless the court applied the constructive filing doctrine.

We find nothing inherent in the constructive filing doctrine which precludes its application to the People, nor is there any principled reason to deny the People the same benefits accorded a defendant. The People are entitled to the same judicial impartiality, fairness and due process rights as defendants (*People* v. *Beasley* (1970) 5 Cal.App.3d 617, 630 [85 Cal.Rptr. 501]; *People* v. *Arline* (1970) 13 Cal.App.3d 200, 205 [91 Cal.Rptr. 520]; *Department of Corrections* v. *Superior Court* (*Ayala*) (1988) 199 Cal.App.3d 1087, 1092 [245 Cal.Rptr. 293]) so long as such equality of treatment does not otherwise trample on the special constitutional protections accorded criminal defendants. According the People equal access to the constructive filing doctrine in this case would do no injury to any specific constitutional rights to which the defendant is entitled.

█ We therefore review the facts of this case to determine whether the doctrine *should* be here applied. The *Benoit* court examined three general criteria to determine whether it was appropriate to invoke the constructive filing doctrine to permit a late-filed appeal: (1) Was the appellant diligent in asserting his challenge to the disputed ruling? (2) Was his failure timely to appeal the disputed ruling principally attributable to the fault of others, or to the conduct of others which lulled him into a false sense of security? and (3) Would permitting a late-filed appeal serve the interests of justice? (*In re Benoit, supra,* 10 Cal.3d at pp. 83-84, 86, 89.)

█ Our review of these factors convinces us that application of the doctrine is appropriate here. The People's diligence is unquestioned. Within one week of the disputed ruling the People filed extensive points and author-

ities to challenge and seek reversal of the ruling, and thereafter prosecuted a hearing on their challenge with all deliberate speed. The failure timely to appeal was primarily attributable to the error by counsel in seeking reconsideration rather than appeal[7] (which, under *Benoit,* is cognizable as an excuse under compelling circumstances), and to the error of the court in assuming jurisdiction over the motion. If the court had dealt with the motion in a manner consistent with its lack of jurisdiction under the *Levi/Lindsey* rule and rejected it forthwith, there would have been ample remaining time for the People timely to appeal the original ruling. Instead, the People failed to file a timely appeal because they were "lulled into a false sense of security" by the court's improper assertion of jurisdiction. ■ ■■■■ At least two courts have concluded, on analogous facts, that a court's improper assertion of jurisdiction can provide justification for permitting a late-filed appeal.[8]

In *People* v. *Martin, supra,* 60 Cal.2d 615, 618-619, the defendant's failure to file resulted from the trial court's agreeing to hear a new trial motion, when in fact it lacked jurisdiction to entertain such motion. The appellate court held the trial court's conduct, which induced the filing error, should not cause the right to appeal to be forfeited.

The facts in *People* v. *Hales* (1966) 244 Cal.App.2d 507 [53 Cal.Rptr. 161] are remarkably similar to those of this case. In *Hales* a defendant

---

[7] Indeed, all counsel apparently believed the court had jurisdiction to reconsider its prior motion, since defense counsel never challenged the jurisdictional propriety of the motion for reconsideration.

[8] We acknowledge, of course, that at least two courts have refused to "excuse" a late-filed notice of appeal under circumstances analogous to our case, i.e., where the appellant used the excuse he was "misled" into a delayed filing because the trial court erroneously agreed to consider a second (but jurisdictionally invalid) motion for new trial. (See *Wenzoski* v. *Central Banking System, Inc.* (1987) 43 Cal.3d 539, 542 [237 Cal.Rptr. 167, 736 P.2d 753] [misapprehension by trial court and parties of ability to consider second motion does not extend time to appeal from denial of the first, and only jurisdictionally valid, new trial motion]; *Ten Eyck* v. *Industrial Forklifts* (1989) 216 Cal.App.3d 540, 545-546 [265 Cal.Rptr. 29].) However, both cases were *civil* cases. In the civil arena a rule is applied which permits *no* excuses for late-filed appeals. (See *Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660 [125 Cal.Rptr. 757, 542 P.2d 1349].) The history for criminal cases differs. Under the rubric of "constructive filing," some untimely appeals are permitted where necessary "in order to do justice." (*In re Benoit, supra,* 10 Cal.3d 72, 84.) Absent resort to "transparent fictions" (*Hollister Convalescent Hosp., Inc.* v. *Rico, supra,* 15 Cal.3d at p. 667 (dis. opn. of Tobriner, J.)), the rule applicable to criminal cases appears irreconcilable to that in civil cases. (Compare, e.g., *People* v. *Martin* (1963) 60 Cal.2d 615, 618-619 [35 Cal.Rptr. 769, 387 P.2d 585] [excusing late-filed appeal where defendant misled by trial court's agreement to hear jurisdictionally invalid new trial motion] with *Wenzoski* v. *Central Banking System, Inc., supra,* 43 Cal.3d at p. 542 [disallowing excuse on parallel facts]; compare also *In re Benoit, supra,* [excusing late-filed appeal based on error committed by appellant's attorney] with *Ten Eyck* v. *Industrial Forklifts, supra,* 216 Cal.App.3d at pp. 545-546 [refusing to acknowledge attorney's error as grounds for excusing late-filed appeal].) Since we deal here with criminal proceedings, we do not feel bound by cases illustrating the civil rule, such as *Wenzoski* and *Ten Eyck.*

moved for a new trial after the court had already lost jurisdiction to consider the motion. However, because the court indicated it was sympathetic to the motion, the defendant (on advice of his counsel) dismissed his notice of appeal in order to revest the trial court with jurisdiction. The trial court then vacated the judgment and granted the motion for new trial. On appeal the appellate court first ruled that the trial court lacked jurisdiction to vacate the judgment or to grant the motion for new trial, and hence reinstated the judgment of conviction. (*Id.* at pp. 509-511.) However, recognizing that the trial court's assumption of jurisdiction had misled the defendant into failing properly to appeal the judgment, and that injustice would result if the judgment were reinstated without allowing defendant an opportunity to appeal from such reinstated judgment, the *Hales* court invoked the constructive filing principles as amplified by *People* v. *Martin* and revived the defendant's right to appeal from the reinstated judgment. (244 Cal.App.3d at p. 515.)

 ██ We believe the interests of justice in this case are similarly served by permitting the People an opportunity to appeal from the reinstated order. The defendant, convicted of several offenses by a jury, obtained a new trial based primarily on the trial court's conclusion that the People's failure to file *written* opposition to a new trial motion effectively waived the right to oppose such motion. Although the propriety of the ruling is not before us, it appears to be at least a novel basis for granting a new trial, particularly on the peculiar facts and procedural context of this case. We are reluctant to cause forfeiture of the People's right to appellate review merely because the trial court (and indeed the defendant) erroneously assumed that a challenge to the order by motion for reconsideration was jurisdictionally proper, thereby lulling the People into forgoing an appeal of the order granting new trial.

D. *The Sentence of the Weapons Charge Should Be Remanded for Reconsideration of the Appropriate Sentence in Light of the Disposition of the Drug Charges*

Snyder was sentenced, following his guilty plea to the weapons charge, to the midterm of two years on that charge. The probation report on the weapons charge, which ultimately recommended imposition of the two-year midterm, had initially indicated probation would have been recommended on that charge in the absence of information on the drug charges, and therefore suggested that sentencing be held in abeyance until a ruling had been made on the new trial motion.

 ██ Snyder argues, in essence, that sentencing on the weapons charge was "infected" by the denial of his motion for new trial, which we have

concluded was in error. The People do not dispute this contention, nor do they argue it is unlikely that Snyder will receive a more favorable sentence in the absence of the error. Remand for a new probation report, and resentencing on the weapons charge, is therefore appropriate.

DISPOSITION

The judgment on case number CRN11888 (the drug charges) is reversed with instructions (1) to vacate the order granting reconsideration; (2) to vacate the order denying new trial; and (3) to reinstate the order granting new trial. The People are granted leave to file a notice of appeal from the order granting new trial within 60 days after the remittitur is filed in the trial court.

The judgment on case number CR87461 (the weapons charge) is reversed solely for sentencing consistent with this opinion. In all other respects, that judgment is affirmed.

**WORK, Acting P. J.,** Concurring and Dissenting.—

I

In clear contravention of that practical maxim, which may be paraphrased in street vernacular as "if it ain't broke, don't fix it," a majority of this panel has seen fit to clothe the People in that equitable mantle broadly referred to as "constructive filing."

A covering which, I submit, is ill-fitting because it is simply not tailored for that purpose. This judicial doctrine, providing an exception to the otherwise rigidly enforced jurisdictional bar to late-filed appeals, has heretofore been confined to convicted criminal defendants under narrowly defined circumstances. While this fact alone is no legal impediment to its expansion, the plain fact is that neither party raised the issue on this appeal. The People expressed no concern about further appeal. Thus, we have raised the issue ourselves in a classic case of needless judicial meddling and, worse, reached a result I perceive to be incorrect.

The doctrine referred to under the rubric of "constructive filing" was discussed at some length in *In re Benoit* (1973) 10 Cal.3d 72 [109 Cal.Rptr. 785, 514 P.2d 97], where it is described as being developed through a series of cases "dealing mainly with incarcerated prisoners, [in which] the jurisdictional theory has been qualified, and excuses for late filing accepted." (Witkin, Cal. Criminal Procedure (1963) § 696, p. 678.) Here, my two colleagues would expand that narrowly circumscribed doctrine for use *against* a

convicted defendant to avoid "slavish adherence to such deadlines [which would violate] more basic justice." (*Castro v. Superior Court* (1974) 40 Cal.App.3d 614, 617 [115 Cal.Rptr. 312].) However, their extracontextual extraction of this line from *Castro* ignores the fact that decision considered and resolved a different question, the effect of a court's failure to fulfill its duty to advise a defendant of appeal rights at the time of sentencing. *Castro* did not address the doctrine of "constructive filing." (*Id.* at p. 618, fn. 4.) They also omit the companion sentence of the paragraph from which this quotation is taken in which the court explains the equitable principles underlying promulgation of the "constructive filing" doctrine to provide relief to convicted defendants. That sentence states, "[e]xperience has shown that persons who have just been convicted of crime are among the *most ignorant of litigants, less able than most to communicate with their legal advisors* who often fail to perform the most elementary duties one would expect of them." (*Id.* at p. 617, italics added.)

Until today, I had discerned no appellate propensity to publicly pronounce such a characterization for prosecutors to provide them the benefit of principles propounded for the "most ignorant of litigants, less able than most to communicate with their legal advisors." Here the prosecutors *are* the legal advisors. They have no incarcerated, or likely to be incarcerated, client to whom an essentially unreviewable criminal record will attach for life. Moreover, in the case we address today, the prosecutors have the right to retry this incarcerated defendant who, in any event, is well on the way to completing his sentence, and who likely will have completed it by the time of any retrial. Thus, we do not address a situation as *In re Benoit* and the cases it cites. In those decisions, the principle has been extended in the "interest of justice" only to convicted persons. (*In re Benoit, supra,* 10 Cal.3d at p. 86.) Nor, are we addressing a litigant "under sentence and facing the restraint of jail or prison, [who must] rely on his trial counsel for assistance." (*Id.* at pp. 86-87.)

My colleagues cite *People v. Martin* (1963) 60 Cal.2d 615 [35 Cal.Rptr. 769, 387 P.2d 585], which predates *Benoit,* for their proposition "there was no indication that defendant's failure timely to file an appeal resulted from his incarceration, or even that he was jailed at the relevant times." Although a reading of the factual scenario detailed in *Martin* leaves no doubt that defendant was in fact incarcerated at all relevant times, that single fact seems less than critical. One suspects the doctrine should be available for any recently convicted, "most ignorant of litigants" whose counsel deliberately or inadvertently fails to fulfill a fiduciary obligation to perfect a timely appeal (see, for instance, the egregious, deliberately understated, facts recited in *In re Fountain* (1977) 74 Cal.App.3d 715 [141 Cal.Rptr. 654]), or who has been adversely finessed by acts of the state.

In any event, the issue of incarceration or lack thereof is irrelevant to whether this equitable doctrine created to avoid the draconian application of an undeviating jurisdictional rule designed to promote finality of convictions with reasonable certainty and promptness should be expanded to ameliorate the legal lapses of prosecutors. (See *Castro v. Superior Court, supra*, 40 Cal.App.3d at p. 617.)

My colleagues' "sauce for the goose is sauce for the gander" approach would justify late-filed appeals by prosecutors who simply forget to timely file their notices or where the paperwork has been misdirected or misfiled. Thus, the fiction which my colleagues would apply, i.e., that somehow the prosecutors are representing a client who should not be prejudiced by the prosecutor's failure to know or to follow the law, permits an absurd result.

Moreover, I am convinced that prosecutors would agree they are not "birds of a feather" with convicted criminal defendants and would not likely include themselves with those "most ignorant of litigants" Justice Kaus describes in *Castro.* Nor has the law seen fit to treat them as if they belonged in the same gaggle as that goose it is their duty to attempt to cook. That is why there is no rule of court, statute or appellate decision requiring the People to be advised of their right to appeal at any stage of the proceedings to which that right attaches. The barons at Runnymede perceived the substantial disparity between the Crown and its prosecutors and those *charged* with crime when they forced King John to seal the Magna Carta whose guaranties of due process of laws inure today. The same recognition of need to provide equitable relief for individuals *accused* of crime saw the contemporary origination of Habeas Corpus in English Chancery Court which since at least the mid-14th century, has been so elemental to the Anglo-American justice system as to be constitutionally protected by the Founding Fathers of this nation.[1] Although the subject of extensive review in both English and American jurisprudence, I have found no published thought that these rights also should be available to the prosecuting governmental executive because of some perceived lack of parity with those charged and/or convicted of a crime.

Although the lead opinion cursorily discusses the major California cases involving "constructive filing," it cites none even casually hinting at the possibility of applying it to the prosecution. It relies instead on a perceived necessity to do so because of "fairness." Fairness is, however, an amorphous characteristic, one found or not in identical circumstances depending upon

---

[1] A scholarly discourse on the historical developments of the separate process of Magna Carta and the equitable doctrine of habeas corpus is succinctly expressed by Professor Daniel J. Meador in his treatise, *Habeas Corpus and Magna Carta,* published in 1966 by the University Press of Virginia.

the personal backgrounds, proclivities, and perceptions of trial judges. It becomes then a principle subject to an abuse of discretion test on review, itself a less than precise standard. For instance, I find nothing so unfair in relegating the prosecution here to its statutory remedy of new trial as to justify an expansion of the "constructive filing" doctrine.

After fruitlessly traversing other reported decisions, the lead opinion hoists its banner solely on *People* v. *Martin, supra,* 60 Cal.2d 615, and its version of the "constructive filing" principle that was adopted in *People* v. *Hales* (1966) 244 Cal.App.2d 507 [53 Cal.Rptr. 161], erroneously stating the facts of those cases are "remarkably similar" to ours. It does so, however, after rejecting contrary holdings of civil cases on our precise facts.[2]

In *People* v. *Martin, supra,* 60 Cal.2d 615, the Supreme Court discussed a criminal defendant's late-filed notice of appeal acting in propria persona. Had that defendant been represented by counsel who negligently failed to fulfil their fiduciary responsibility, whether "lulled" by the actions of the trial court or otherwise, he would have been entitled to relief under the plain holdings of *In re Benoit, supra,* 10 Cal.3d 72 and *In re Fountain, supra,* 74 Cal.App.3d 715. The only "twist" in *Martin* occurred because the court was forced to overcome the settled legal proposition that defendants *representing themselves* who suffer some disadvantage due to ignorance of the law are not entitled to relief. (*People* v. *Martin, supra,* 60 Cal.2d at p. 619.) After review, it found the principle of "constructive filing" should be available under proper circumstances to *unrepresented* defendants acting as their own attorneys. The logic of this resolution is apparent. Irrespective of their decision to act personally as their own counsel, lay defendants still generally fall within that class Justice Kaus described as the "most ignorant of litigants" who often fail to understand the most rudimentary substantive and procedural rules of litigation, let alone sophisticated nuances relating to trial court jurisdiction to hear motions for a new trial after judgment. (*People* v. *Martin, supra,* 60 Cal.2d at p. 618.)[3]

Also, in *People* v. *Hales, supra,* 244 Cal.App.2d 507, the facts are far from "remarkably similar" to ours. In fact, it is difficult to conceive how they could be more dissimilar. In *Hales,* the trial court reviewed the *People's*

---

[2] See lead opinion footnote 8, discussing the Supreme Court's decision in *Wenzoski* v. *Central Banking System, Inc.* (1987) 43 Cal.3d 539, 542 [237 Cal.Rptr. 167, 736 P.2d 753], and the appellate court decision of *Ten Eyck* v. *Industrial Forklifts* (1989) 216 Cal.App.3d 540 [265 Cal.Rptr. 29]. Unable to distinguish them on the facts, my colleagues simply dismiss them as civil cases.

[3] It is surprising neither of my colleagues comment on a remarkable dissimilarity between *Martin* and this case. In *Martin,* the People took the position that an order made following a second motion for new trial is a nullity, a view the court adopted. The People argue the exact opposite in this case.

timely appeal following a grant of the defendant's motion for new trial. (Precisely the avenue of relief available to the People following the entry of judgment in this case.) The appellate court found the motion for new trial had been brought only after judgment had been entered, without the bringing of an application of writ of *error coram nobis* after final judgment or stating grounds for such relief in the motion to vacate that judgment. Accordingly, the trial court was not legally authorized to set aside the judgment and, because as a matter of law the judgment never had been effectively vacated, the motion for new trial was declared void. Without any discussion or observable analysis, the reviewing court treated the issue of "constructive filing" in toto as follows: "Although the orders must be reversed, the defendant should not be deprived of his right to appeal from the judgment. Under the principles enunciated in *People* v. *Martin, supra*, 60 Cal.2d 615, he may be granted to within 10 days [*sic*] after the termination of the proceedings which have arisen because of the improper assertion of jurisdiction by the trial court." (*People* v. *Hales, supra*, 244 Cal.App.2d at p. 515.)

Frankly, it is difficult to discern what "principles" derived from *Martin* the court found factually appropriate to those in *Hales.* There, the defendant actually had filed a *timely notice of appeal* the same date judgment was entered and the appellate court obtained jurisdiction on that date. Jurisdiction was not restored to the trial court until after the trial court purported to vacate the judgment and grant a new trial. It was only after the trial court vacated its judgment that the defendant understandably abandoned his appeal. (*People* v. *Hales, supra*, 244 Cal.App.2d at p. 512.) It is hardly remarkable the reviewing court, without discussion, permitted Hales to resuscitate his appellate rights. However, that factual, procedural and legal scenario lacks even a cosmetic resemblance to those from which the lead opinion would fashion a totally unnecessary and unwarranted exception to the jurisdictional treatment of untimely filed appeals.

## II

 I do, however, concur in the remainder of the lead opinion. The concerns expressed in Justice Benke's dissent were considered and rejected in *People* v. *Hernandez* (1988) 199 Cal.App.3d 768 [245 Cal.Rptr. 156]. Her reliance on (or at least, allusion to) *People* v. *Martin* (1926) 199 Cal. 240, 242 [248 P. 908], and *People* v. *Paysen* (1932) 123 Cal.App. 396, 399-400 [11 P.2d 431], as purporting to declare a relevant exception to what she characterizes as a "general" rule avoidable in the interest of justice, is misplaced. That it is so, is demonstrated clearly in both *People* v. *Hernandez, supra*, 199 Cal.App.3d 768, and *People* v. *Stewart* (1988) 202

Cal.App.3d 759 [248 Cal.Rptr. 907], the two decisional authorities she uses as a springboard to elevate these atavistic authorities.

In *People* v. *Hernandez, supra,* 199 Cal.App.3d 768 (review den. June 22, 1988), the court of appeal emphasized it was bound by the total proscription against multiple new trial motions stated in *People* v. *Martin, supra,* 199 Cal. 240, and *In re Levi* (1952) 39 Cal.2d 41 [244 P.2d 403]. It specifically rejected the People's argument that the exception referred to in *Martin* and *Paysen* survive today. For instance, the court observed the "premature or inadvertence" exception noted but rejected in *Martin,* was based on a civil case, *Robson* v. *Superior Court* (1915) 171 Cal. 588 [154 P. 8].[4] *Martin's* jurisdictional rationale was based on a now repealed statute giving criminal defendants the right to appeal from an order denying a motion for new trial. As recognized in *People* v. *Stewart, supra,* 202 Cal.App.3d at page 762, legislation has long since eliminated that prejudgment right of appeal.[5] It is in the context of a statute no longer affording a defendant the right of prejudgment appeal that *Stewart* and *People* v. *Risenhoover* (1966) 240 Cal.App.2d 233 [49 Cal.Rptr. 526], mull in dicta the continued viability of the *Martin/Levi/Lindsey* jurisdictional pronouncements. Justice Benke's dissent overlooks the significance of the fact we address a case in which the People's statutory right to prejudgment appeal still exists, and they stand before us in the precise procedural posture reviewed by the Supreme Court in *Levi* and the Court of Appeal in *Martin* where their position was rejected.

**BENKE, J.,** Concurring and Dissenting.—I cannot agree with the majority's conclusion that the trial court had no jurisdiction to reconsider its order granting a new trial.

The jurisdictional limitations which govern the bringing of subsequent motions for new trial or reconsideration of such motions are neither statutorily nor constitutionally created. They are in my opinion procedural rules "originally devised for convenience and efficiency, and by precedent made mandatory and jurisdictional." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715].) For this reason, and remembering the rationale for the rule's existence, it is not surprising that, while substantial authority exists prohibiting the bringing of a second motion for new trial or reconsideration of such a motion, the rule itself is general and subject to exceptions where the interests of justice compel such exceptions. (*People* v. *Hernandez* (1988) 199 Cal.App.3d 768, 771-772 [245 Cal.Rptr. 156]; compare *People* v. *Stewart* (1988) 202 Cal.App.3d 759 [248

---

[4] By concurring in the lead opinion, Justice Benke gives no weight to civil decisions on all factual fours with this case when promulgating the novel theory that the "constructive filing" principle should be available to the People.

[5] Amendment to Penal Code section 1237 (1961).

Cal.Rptr. 907].) One such exception, where a new trial order was inadvertently or prematurely made, is noted in both *People* v. *Martin* (1926) 199 Cal. 240, 242 [248 P. 908], and *People* v. *Paysen* (1932) 123 Cal.App. 396, 399-400 [11 P.2d 431]. An analogous situation exists in this case.

The trial court here erroneously believed that because a party failed to file a written response, it must be deemed to have conceded and, further, was precluded from any substantive oral response. When the error was brought to the court's attention, it quickly corrected the matter and restored to itself a fundamental responsibility going to the validity of the decisionmaking process.

The majority concludes that despite the clear error, the parties must endure the considerable time and expense of an appeal, at the conclusion of which our already overburdened courts must remand the case to the trial court to do what, perhaps years earlier, it recognized it should have done.

The imperative of correction at trial of such fundamental mistakes far surpasses the concern that by correcting this injustice we might bridle the lower courts with more motions to reconsider than they can handle. Where we preclude such correction, we do not enhance the goals of efficiency and convenience which underlie the rule prohibiting multiple motions for new trial. We diminish them. If we cannot bring ourselves to acknowledge the need for an exception permitting timely correction of fundamental errors such as this, the rule from which such exceptions spring should be reconsidered. (See *People* v. *Stewart, supra*, 202 Cal.App.3d 759.)

 ██ ██ ██ However, for the reasons stated in Justice Froehlich's lead opinion, I agree that in this case the People's right to appeal must be restored. I would only emphasize that were we to allow trial courts to timely correct fundamental errors of the type seen in this case, we would not be mired in the frustrating determination of whether our traditional principles of due process and equity ought permit an appeal by the People.