[Civ. No. 4044. First Appellate District, Division Two.—December 13, 1921.]

HENRY SOMMER et al., Respondents, v. J. A. MARTIN et al., Appellants.

[1] NEGLIGENCE [1]— PERSONAL INJURIES — ACTION FOR DAMAGES — CONTRIBUTORY NEGLIGENCE—PLEADING AND PROOF.—The plea of contributory negligence is an element that must be pleaded and proved by the defendants, unless the evidence appears from the testimony given in the plaintiffs' case; and in this action by a husband and wife for damages for injuries sustained by the latter by being struck by an automobile which one of the defendants was driving, it could not be said that, as a matter of law, such wife was guilty of contributory negligence—that is, that all the facts plainly and inevitably pointed to such negligence, leaving no room for argument or doubt.

[2] ID.—EXCESSIVE VERDICT—EVIDENCE—APPEAL.—In this action for damages for personal injuries, the jury apparently having believed the evidence of plaintiff as to the extent of her injuries, the length of time she was confined to her bed, the seriousness of the pain

---

1. Duty of pedestrians to look out for automobiles, notes, 4 **Ann. Cas.** 400; 3 **L. R. A. (N. S.)** 345; 20 **L. R. A. (N. S.)** 232; 38 **L. R. A. (N. S.)** 488; 42 **L. R. A. (N. S.)** 1179; 51 **L. R. A. (N. S.)** 992.

2. Excessive verdict for personal injuries not resulting in death, notes, 16 **Ann. Cas.** 8; **Ann. Cas.** 1913A, 1361; inadequate verdict, notes, **Ann. Cas.** 1916B, 384, 450, 451, 454, 455, 457.

and suffering to which she was put, and the amount of money she was required to pay for doctors' services and medicine and for help employed to do the housework which she had theretofore done, the appellate court was not at liberty to hold that the verdict was excessive.

[3] ID.—CONCLUSION OF DEFENDANT—IMPROPER QUESTION.—In an action for damages for personal injuries sustained by being struck by an automobile, an objection to a question asked of the defendant, by his own counsel, as follows: "Was there anything you could have done that you did not do to avoid the accident?" is properly sustained as calling for the conclusion of the witness.

[4] ID.—SPEED OF AUTOMOBILE—QUALIFICATION OF WITNESS TO TESTIFY.—In such an action, where it is first shown by a witness that he had driven an automobile for about a year and a half, that he had driven cars having a speedometer, and that he had watched speedometers to gauge his speed, the necessary foundation is laid to permit that witness to testify as to his ability to estimate the speed of the automobile at the time it struck plaintiff and to give his estimate of the speed thereof.

[5] ID.—THEORY OF CASE—APPLICATION OF LOCAL ORDINANCE—APPEAL—ESTOPPEL.—Where during the trial the plaintiffs introduced the local municipal traffic ordinance and the defendants made no objections, but stipulated that the whole ordinance should be deemed in evidence and that either party might read such sections thereof as they desired, and it was further stipulated that such ordinance provided a certain speed limit at the place where the accident happened, and the attention of the lower court at no time was called to the question as to whether the state statute or such local ordinance was controlling, the defendants are not entitled to raise that question on appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Mattison B. Jones for Appellants.

E. S. Williams for Respondents.

STURTEVANT, J.—The plaintiffs, as husband and wife, commenced an action against the defendants to recover dam-

---

4.  Qualification of witness to testify as to speed of automobile, notes, 19 Ann. Cas. 754; Ann. Cas. 1917D, 613; 34 L. R. A. (N. S.) 778.

ages for injuries sustained by being struck by an automobile which one of the defendants was driving. The defendants answered and a trial was had by the court sitting with a jury. The jury returned a verdict in favor of the plaintiffs; the defendants moved for a new trial; the motion was denied on condition that the plaintiffs would remit one thousand dollars, which they did, and from the judgment as modified the defendants have appealed, bringing up the judgment-roll and a bill of exceptions.

[1] 1. The first point made by the appellants in their brief is that the plaintiff wife was guilty of contributory negligence. Under this attack the appellants claim that Mrs. Sommer immediately preceding the accident stepped into the street without looking to her right or to her left. She testified in answer to certain questions as follows:

"Q. You went out—as you went out toward the street-car there was an automobile or more to your left? A. I don't remember that.

"Q. Would you say there was not? A. I would not say because I don't remember."

In another place she testified as follows:

"Q. You say you went out into the roadbed with a view of getting this car and at that time you had not seen the automobile? A. No, sir.

"Q. You did not see it at all, but the first you knew was the gush of wind and the bump? A. Yes, sir. The car was stopped at the time. I do not know how long it had been stopped."

The defendant J. A. Martin testified:

"Q. When did you first see Mrs. Sommer? A. When she first emerged from in front of an automobile standing at the curb approximately opposite the telegraph pole indicated on the drawing. . . .

"Q. What did she do after emerging from behind the automobile? A. She ran or was in haste to hail this street-car. She ran out there with her hand up like this, looking at the car, never stopping to look right or left."

Mrs. Hallie Barker, one of the defendants' witnesses testified:

"Q. How close was she to the car when you first passed her? A. She was coming to it; she was about middle way; just came in front of this automobile. She was still out in

front of it in the street. . . . She was coming across in front of this car when I first seen her. I didn't see her leave the sidewalk at all.''

Mrs. Nettie Sheoff, a witness called by the defendants, testified: ''As the car was slowing down, I saw through the open door, through the open door of the car, the back part of the car, a lady standing there, and as the car passed her she stepped back, I don't know what for, I thought she was going back to the sidewalk. Just at that instant when the car had passed and she was about the steps, I saw an automobile and she hit the fender of the auto.'' Mr. Overpeck, a witness called by the defendants, testified that he was employed in Ralph's grocery-store. That store was located directly back of the plaintiff. The witness was, at the time of the accident, dressing a window of the store. He was facing the back of the plaintiff. Referring to the plaintiff, he testified: ''She left the curb and went out with her hand in the air. I think it was her right hand. She held her hand up to the height of her face. At that time she was looking directly at the electric car. I did not see her look to the right or left.'' The plea of contributory negligence is an element that must be pleaded and proved by the defendants unless the evidence appears from the testimony given in the plaintiff's case. The foregoing testimony shows to some extent what the plaintiff did while she was out in the street, but it does not show what she did before leaving the sidewalk in reference to looking up or down the street. We cannot say that, as a matter of law, respondent was guilty of contributory negligence—that is, that all the facts plainly and inevitably point to such negligence, leaving no room for argument or doubt. (*Mann* v. *Scott*, 180 Cal. 550, 552 [182 Pac. 281].) Regarding this same plea, the appellants contend that when the plaintiff was at the side of the electric car and at the time that the defendant J. A. Martin drove his automobile alongside of the car, that the plaintiff stepped back one step and collided with the automobile. On this same subject the plaintiff testified: ''When the street-car came along I was standing in the street; I went out into the street before it came along to be there to get it. The car came to a stop. When it came to a stop I was right at the steps. A lady got off and I stepped aside to let her off. When she started to get off I was just a little

ahead of the rear steps of the car. I was too close to her to let her off. I stepped aside so she could get down. All the rest I remember is just a big gush of wind and a bump." From the foregoing testimony we are not inclined to hold that the plaintiff was guilty of contributory negligence.

2. We are not clear that the appellants are contending that the evidence was not sufficient to show that the defendant J. A. Martin was guilty of negligence. If such is their contention, it will suffice to state that on that element of the case the most that can be said is that the evidence was conflicting. There was an abundance of testimony which, if the jury believed it, would readily support a verdict in favor of the plaintiff.

[2] 3. The appellants contend that the verdict was excessive, but, under the facts shown by the record, we are not at liberty to so hold. According to the testimony of the plaintiff and her witnesses, she was knocked down in the street and was, by the defendant J. A. Martin, or others, picked up, put in an automobile, conveyed to her home, and at that place she was lifted from one place to another and was compelled to be, and was, undressed by other persons. She was in such terrible pain and agony that she could not bear to have anybody touch her. She was hit and bruised on her body, on her left arm, and the whole of her left side. Both ankles were skinned and strained; she was hit all over. From one bed she was moved to another in a sheet because she could not stand to be touched. She remained in bed from a month to six weeks, and then went down to have some X-rays taken; at that time she was carried to the machine and into the office and back to the machine; after that she became worse, and she returned to her bed and remained there another month or six weeks. During the first month or six weeks the pain was terrible and it continued night and day—there was no let-up to it; during the first month or six weeks she did not sleep at all; she experienced pain all the time for at least a year and a half; it was that long before she could move her arm. She further testified that Dr. Abbott worked with her left arm until he got it into place. Before the accident the plaintiff did all her own work, including laundry, cooking, sweeping, and cleaning, but since the accident she has never been able to do this work. At the time of the trial she was able to

do her cooking and a little work. She paid Dr. Abbott seventy-five dollars; for the first twenty-three weeks she was compelled to employ help at three dollars and twenty cents for each week, and then for twenty-eight weeks she was compelled to employ help to the extent of two dollars and sixty cents for each week. She paid another doctor twenty-nine dollars and she paid nineteen dollars and fifty cents for medicines, etc. Her daughter, who had been employed at eighteen dollars a week, was compelled to remain at home to care for her mother for a period of nine weeks. As to many of the foregoing matters, it is but fair to the appellants to state there is evidence tending to refute the seriousness of the pains and injuries which the plaintiff claims to have suffered. But, if the jury believed the story as told by the plaintiff, its verdict was not excessive.

[3] 4. When the defendant J. A. Martin was on the stand as a witness his counsel asked him: "Q. Was there anything you could have done that you did not do to avoid the accident?" Counsel for the plaintiff objected to the question as calling for the conclusion of the witness. The objection was sustained. There was no error in the ruling.

[4] 5. Ralph Kelly was called as a witness by the plaintiffs. At the time of the accident he was about fourteen years of age. He testified that he had driven an automobile for about a year and a half. There was no speedometer on his car, but he had driven other cars that had such an appliance attached. He said he had watched speedometers to gauge his speed. He was asked the question: "And from that experience can you make an estimate as to how fast that automobile which struck the woman was traveling at the time that it struck her?" Counsel for the defendants objected to the question on the ground that no foundation was laid. The court overruled the objection and in so ruling the court did not commit an error. (22 Corpus Juris, 567, sec. 676.) The witness answered the question that the automobile was traveling between twenty and twenty-five miles per hour.

6. The court gave an instruction to the jury that follows very closely the rule stated in the Motor Vehicle Act approved May 10, 1915. (Stats. 1915, c. 188, sec. 12.) The appellants attack the instruction on the ground that it assumes that the plaintiff was in the act of entering a street-

car at the time of the collision. The attack is wholly without merit. It could equally be claimed that the instruction assumed that she was leaving the street-car or that she was neither entering nor leaving, but was a pedestrian in the street.

[5] 7. During the trial the plaintiffs introduced the traffic ordinance of the city of Los Angeles in effect on November 14, 1917. The defendants made no objections, but stipulated that the whole ordinance should be deemed in evidence and that either party might read such sections thereof as they desired. Counsel for the plaintiff read from the ordinance: "It shall be unlawful for the driver of any vehicle, upon overtaking any street-car or interurban railway car which is stopped for the purpose of discharging or taking on any passengers, to fail, neglect, or refuse to stop such vehicle at least ten feet in the rear of such street-car or interurban railway car and to keep such vehicle standing where so stopped until such passengers or intending passengers have safely alighted from or boarded said street or interurban railway car or until such street or interurban railway car shall have started." It was also stipulated that paragraph 80 of said ordinance provided that speed limit of vehicles on Vermont Avenue at the place the accident occurred, that is to say, along and upon Vermont Avenue in the neighborhood of 35th Place, was twenty miles per hour, and that said traffic ordinance prohibited a speed in excess of twenty miles an hour on that part of Vermont Avenue. Thereafter, on the request of the plaintiffs, the court gave two instructions based on the provisions of said ordinance. At no time was the attention of the lower court called to the question as to whether the state statute or the ordinance of Los Angeles was controlling. Since the instant case was tried in the lower court the supreme court has decided the case entitled *Ex parte Daniels*, 183 Cal. 636 [192 Pac. 442]. The appellants at this time seek to apply to the instant case the doctrine announced in the Daniels case. By reason of the foregoing facts, we think that they are not at this time entitled to make that contention. In the trial court both parties proceeded on the theory that the traffic ordinance of the city of Los Angeles was applicable to the trial of certain features of this case. The defendants did not raise the question in the lower court;

they are not therefore entitled to raise the question in this court. "Besides, it is due to the judge, in furtherance of justice, that his attention should be called to the legal principle which is claimed to be violated by the admission or rejection of the evidence. In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal." (1 Hayne on New Trial and Appeal, sec. 103.) In the case of *Horace F. Wood Transfer Co.* v. *Shelton,* 180 Ind. 273, 279 [101 N. E. 718, 720], the court said: "In attacking instructions Nos. 7, 9, 13, and 14 given by the court on its own motion, appellant seeks to question the validity of an ordinance of the city of Indianapolis providing a speed limit for automobiles within a certain prescribed territory in said city. During the progress of the trial the attorney for appellees read in evidence the ordinance in question and asked, 'There is no question about the validity and force of this?' To which one of the attorneys for appellant replied: 'Oh, no.' Later it was suggested that a subsequent attack might be made on the ordinance in case of appeal, to which the attorney stated: 'That is an immaterial point. We will let it go just the way it is.' It is a familiar rule that a party is restricted on appeal to the theory adopted at the trial and 'When a theory is thus adopted, and acted upon below, with the concurrence of both parties, a judgment ought not be reversed because the court instructs the jury in accordance with it.' *Carver* v. *Carver* (1884), 97 Ind. 497, 516. See, also, *Graham* v. *Nowlin* (1876), 54 Ind. 389." The case last cited dealt with a municipal ordinance. However, the rule seems to be general with reference to the law applicable to the case on trial. (3 Corpus Juris, 723, sec. 619.)

8. The defendants requested and the trial court refused to give two instructions; the appellants assign each refusal as error. The first proposed instruction purported to define ordinary care. The instruction was of doubtful soundness

because of the use of the word "only." That word tended to belittle the duty resting on the defendant J. A. Martin. But, whether the instruction was correct or incorrect, the subject matter was fully covered by an instruction which appears in the transcript, folios 371 and 372. The other instruction picked out a portion of the evidence and purported to be an instruction on the subject of contributory negligence. The court had covered that subject fully by giving the instructions which it did give and which are set forth in the transcript, folios 392–394, 430, 431.

An examination of the record shows that the trial court committed no error whatsoever. The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.*, was acting.