[Crim. No. 13391. Fourth Dist., Div. One. Aug. 23, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM RANDOLPH CAPPS, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Certified for publication with the exception of sections III, IV, V and VI.

COUNSEL

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant

Quin Denvir, State Public Defender, and Elaine A. Alexander, Chief Assistant State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer and Harley. D. Mayfield, Assistant Attorneys General, John W. Carney, Frederick R. Millar, Jr., Keith I. Motley and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

WIENER, J.—An information charged William Randolph Capps with the murder of Richard Edward McNeese (Pen. Code, § 187)[2] and personal use of a firearm within the meaning of section 12022.5. A jury found Capps guilty of first degree murder and the use allegation to be true. In ruling upon Capps' motion for a new trial, the court modified the verdict to a conviction of second degree murder. (§ 1181, subd. 6.) Capps appeals the judgment entered upon the modified verdict.

The principal question presented is whether the court was factually and legally justified in reducing Capps' conviction of first degree murder to that of murder in the second degree. We answer that question affirmatively. We

---

[2]All statutory references are to the Penal Code unless otherwise specified.

also decide Capps' contentions the court prejudicially erred by instructing the jury on the felony-murder rule, failing to instruct *sua sponte* on involuntary manslaughter, limiting his voir dire, denying his motion for a new trial based on juror misconduct and denying him presentence custody credits are without merit. We affirm the judgment.

### FACTUAL BACKGROUND

On March 8, 1980, when Jocelyn Turner went to the apartment of her boyfriend, Richard McNeese, McNeese was talking with Capps. As Turner sat nearby, the two men continued to chat for about five minutes. The conversation became increasingly louder as the two men started to argue about a scale. Capps wanted the scale because he had some people waiting for him at his house. He needed the scale to weigh his drugs. McNeese refused to give Capps the scale and said: "If you want to fight, well, let's go outside and fight." Capps replied: "I don't need to. I have all the protection I need." As the argument continued, Turner saw Capps pull a gun out of a brown leather pouch that was lying on the floor next to his feet and point the gun at McNeese. Turner asked McNeese whether he wanted her to call the police. McNeese said no. Capps said if the police were called he would "bring my whole biker gang over." Becoming nervous, Turner went to the bathroom to dry her hair. When she left the two men, the gun was back in the pouch and Capps and McNeese were still sitting in the living room and arguing. Moments later Turner heard a popping sound. She came out of the bathroom to see McNeese staggering and fall to the floor. Capps was running out of the apartment. Shortly afterwards a woman ran into the apartment, grabbed something from the floor and ran out.

Phillip Ricardo, a neighbor in a downstairs apartment, heard a gunshot, saw Capps standing in the doorway of McNeese's apartment and then watched Capps run down the stairway holding a gun as a woman ran up the stairway. Another neighbor bumped into Capps outside; Capps had a gun in his hand covered by a coat. Meanwhile, Ricardo saw the woman who ran up the stairs run down and get into the same car as Capps.

A locked black trunk found inside McNeese's bedroom contained a .22 handgun and a shotgun that had been stolen by Capps and Robert Russell in a residential burglary three days before the killing. Russell testified he and Capps transported the loot to Steve Kelso's apartment and had placed it in the back bedroom. Two days before McNeese was killed, Capps had given the .22 handgun to his girlfriend, Wanda Affeldt, as a birthday present. Capps and Affeldt spent that night at Kelso's apartment, three doors down from McNeese's apartment. The next morning, when Capps saw Af-

feldt's purse and gun were missing he was angry and wanted to know who had taken them.

The day before McNeese's homicide Chandra Sinclair was standing outside Kelso's apartment. She overheard a conversation between Capps and a girl named Mary Alice: "He asked where the stuff was." "She said that they brought the stuff to Richard's apartment."

On the day McNeese was killed, Sinclair went to Kelso's apartment. It was empty and it seemed to her its occupants were moving out. When she went to the parking lot, she saw Capps and Affeldt and told them there was nobody at Kelso's apartment. Capps said: "Doesn't matter, we'll go up and find who we're looking for." Capps and Affeldt appeared to be "in a trance," "just really strange." When Capps got out of the car, Sinclair saw a dark pouch near Capps' right side. Affeldt stayed in the car when Capps walked towards the apartment building.

Capps testified he and Affeldt went to the apartment building where McNeese lived looking for Steve Carle, who lived with Kelso and owed Capps some money. Finding no one in the Kelso/Carle apartment, Capps and Affeldt passed by the open door of McNeese's apartment. Capps stayed to talk with McNeese while Affeldt went downstairs to the car. During their conversation, Capps argued with McNeese over a scale. During the argument, Affeldt returned and Capps asked her to look for the scale in the apartment. While Affeldt was in the hall, McNeese opened a cabinet, took out the scale, threw it at Capps and threatened him with a gun. Both men struggled for the gun, but it went off, fatally wounding McNeese. Capps picked up the gun and ran. Affeldt, having heard the gun go off, ran into the living room, grabbed the scale and Capps' jacket, and fled.

Affeldt testified she did not see a gun on Capps when he went into the apartment building and he was not wearing a pouch at his side.

DISCUSSION

I

The jury was instructed on premeditated first degree murder, first degree felony murder (on burglary and robbery theories), second degree murder and voluntary manslaughter. Capps challenges the giving of instructions on the felony-murder rule on both constitutional and factual grounds. We reject Capps' constitutional challenge on the authority of *People* v. *Dillon* (1983) 34 Cal.3d 441, 462-476 [194 Cal.Rptr. 390, 668 P.2d 697]. ■ Since there is sufficient evidence for the second degree murder conviction (see

part IIA, *post*), any error by the trial court in giving first degree felony-murder instructions is harmless. (See *People* v. *Strickland* (1974) 11 Cal.3d 946, 958 [114 Cal.Rptr. 632, 523 P.2d 672].)

## II

Capps attacks the modified verdict at two levels. He argues it is not supported by sufficient evidence and it is constitutionally defective because it deprived him of his rights to trial by jury and due process of law.

## A

■ The modified verdict rests on the court's finding of express malice, the only theory of second degree murder on which the jury was instructed. The modified verdict must be upheld if there is substantial evidence to support it. (*People* v. *Green* (1980) 27 Cal.3d 1, 55 [164 Cal.Rptr. 1, 609 P.2d 468].)

Here, from the evidence presented a rational trier of fact could have found beyond a reasonable doubt that Capps was the aggressor in his argument with McNeese, first threatening and then shooting McNeese with a gun brought along for "protection." Capps' conduct, which was sufficiently hostile to make McNeese think Capps wanted to fight him, and Capps' threat to "bring my whole biker gang over" if Turner called the police indicate Capps used his gun against McNeese with an intent to kill. In short, the record contains sufficient evidence to support the court's finding of express malice (see § 188) and its modification of the verdict to second degree murder.

## B

■ The court instructed the jurors they need not all agree on one of the prosecution's three theories of first degree murder so long as they each were convinced beyond a reasonable doubt that Capps was indeed guilty of first degree murder. (*People* v. *Milan* (1973) 9 Cal.3d 185, 194-195 [107 Cal.Rptr. 68, 507 P.2d 956]; *People* v. *Nicholas* (1980) 112 Cal.App.3d 249, 272-273 [169 Cal.Rptr. 497].) The jury's general verdict, however, does not disclose the theory or theories relied on for the conviction. Consequently, unlike the court, some or all of the jurors relying on the felony-murder rule may not have reached the issue of express malice. Capps argues the court may not modify the verdict based on a fact or element undecided by the jury because to do so violates his constitutional rights to trial by jury and due process of law.

■ The essential elements of a defendant's constitutional right to trial by jury in a felony proceeding (Cal. Const., art. I, § 16) are to have a decision on guilt or innocence made by the unanimous verdict of 12 impartial jurors. (*People* v. *Pierce* (1979) 24 Cal.3d 199, 208 [155 Cal.Rptr. 657, 595 P.2d 91]; *People* v. *Wheeler* (1978) 22 Cal.3d 258, 265-266 [148 Cal.Rptr. 890, 583 P.2d 748]; *People* v. *Collins* (1976) 17 Cal.3d 687, 692-693 [131 Cal.Rptr. 782, 552 P.2d 742]; Witkin, Cal. Criminal Procedure (1963) § 330, p. 323.) Those elements were all satisfied below. "[I]t is clear that the constitutional guarantee [to trial by jury] ([former] art. I, sec. 7) is fully observed when the verdict of the jury in the case is rendered and recorded. ■ The remaining and different question—whether judgment shall be pronounced upon the verdict or the verdict set aside—is 'strictly of legal cognizance,' which must be determined by the trial court . . . ." (*Estate of Bainbridge* (1915) 169 Cal. 166, 169 [146 P. 427]; see also *Estate of Baird* (1924) 195 Cal. 59, 67 [231 P. 744].) In making that determination upon deciding a motion for new trial in either a civil (Code Civ. Proc., § 657, subd. 6)[3] or criminal (§ 1181, subd. 6)[4] case, the trial court must independently weigh the evidence and assess whether it sufficiently supports the jury's verdict.[5] (Civil cases: *Green* v. *Soule* (1904) 145 Cal. 96, 102-103 [78 P. 337]; *Lippold* v. *Hart* (1969) 274 Cal.App.2d 24, 25-26 [78 Cal.Rptr. 833]; 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 35; criminal cases: *People* v. *Serrato* (1973) 9 Cal.3d 753, 761 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People* v. *Robarge* (1953) 41 Cal.2d 628, 633-634 [262

---

[3]Code of Civil Procedure section 657 provides in pertinent part: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party:
" . . . . . . . . . . . . . . . . . . . . . . . . . .
"6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law."

[4]Section 1181 provides in pertinent part: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only:
" . . . . . . . . . . . . . . . . . . . . . . . . . .
"6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed; . . . ."

[5]"In the determination of a motion for a new trial, the verdict should be set aside if, in the opinion of the trial court, it is not supported by sufficient evidence; and this is equally true whether there be an absence of evidence or that the evidence received, in the individual judgment of the trial judge, is lacking in probative force to establish the proposition of fact to which it is addressed. This is the meaning of the terms 'insufficiency of evidence' (Code Civ. Proc., sec. 657, subd. 6) and '. . . contrary to . . . evidence' (Pen. Code, sec. 1181, subd. 6)." (*Estate of Bainbridge, supra,* 169 Cal. at pp. 169-170.)

P.2d 14]; Witkin, Cal. Criminal Procedure, *supra,* § 566, pp. 574-575.) ██ No violation of the right to trial by jury occurs when a court finds the evidence lacking and grants a new trial. (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 889 [151 Cal.Rptr. 285, 587 P.2d 1098], *Estate of Bainbridge, supra,* 169 Cal. at pp. 167-170.) ██ Nor does such a violation occur when, as here, a court finds the evidence insufficient to support the jury's verdict and then decides to modify that verdict (rather than to grant a new trial) based on its conclusion a reasonable jury could have properly determined there was express malice. (Cf. *Jehl* v. *Southern Pac. Co.* (1967) 66 Cal.2d 821, 827-832 [59 Cal.Rptr. 276, 427 P.2d 988].) So long as the modified verdict relies exclusively on evidence presented to the jury (see *People* v. *Watson* (1983) 150 Cal.App.3d 313, 319 [198 Cal.Rptr. 26]), the court does not violate a defendant's right to trial by jury when it finds a fact or element which the jurors also could reasonably have found on the evidence presented.

We also find no due process violation (Cal. Const., art. I, § 7, subd. (a)) resulting from the lower court's decision to modify the jury's verdict. The "lesser degree thereof" and "lesser crime included therein" limitations on the range of permissible modification (see § 1181, subd. 6, at fn. 4, *ante*) preserve a defendant's right to fair notice of the charges against him. (*People* v. *Anderson* (1975) 15 Cal.3d 806, 809 [126 Cal.Rptr. 235, 543 P.2d 603].) Similarly, the requirement the court find the defendant "guilty" of the lesser degree or crime (see § 1181, subd. 6, at fn. 4, *ante*) preserves the prosecution's burden of proof beyond a reasonable doubt. (§ 1096; see *People* v. *Borchers* (1958) 50 Cal.2d 321, 327-328 [325 P.2d 97]; *People* v. *Sheran* (1957) 49 Cal.2d 101, 109-110 [315 P.2d 5].) ██ Furthermore, we see no fundamental unfairness to a defendant when a trial court, in order to *reduce* a conviction, reviews the evidence presented and finds it appropriate to modify the verdict based on a fact or element undecided by the jury. As our Supreme Court stated in an analogous context, ". . . the trial court's action will avoid an unwarranted all-or-nothing [decision by] the jury and will ensure that the verdict is no harsher or more lenient than the evidence merits." (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311].)

III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*See footnote 1, *ante,* page 546.

## DISPOSITION

Judgment affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 14, 1984.