[No. B071850. Second Dist., Div. Seven. Oct. 25, 1993.]

THE PEOPLE, Plaintiff and Appellant, v.
ANDRE LAMAR TAYLOR et al., Defendants and Respondents.

**Counsel**

Gil Garcetti, District Attorney, Brent Riggs and Diana L. Summerhayes, Deputy District Attorneys, for Plaintiff and Appellant.

Katie Murff Trotter and Walter R. Urban, under appointments by the Court of Appeal, for Defendants and Respondents.

**Opinion**

**LILLIE, P. J.**—The People appeal from an August 14, 1992, order granting a new trial on the ground of insufficiency of the evidence. This is the trial court's second order granting a new trial in this case, and the People's second appeal. Appellant contends that after the issuance of our remittitur in a prior appeal directing the trial court to deny the motions for new trial, the trial court had no jurisdiction to entertain, or abused its discretion in hearing, a second motion for new trial. Appellant also challenges the August 14, 1992, ruling on its merits. We address the jurisdictional issue first and then discuss the merits of the court's August 14, 1992, order.

## PROCEDURAL BACKGROUND

After a jury found defendants guilty of attempted first degree murder of Andre Marshall (count 1) and conspiracy to commit murder (count 2), and found true the allegations that in the commission of each offense each defendant personally inflicted great bodily injury and personally used a firearm, defendant Taylor filed a motion for new trial on the ground of evidentiary error at trial and joined in defendant Atlas's motion for new trial on the ground of newly discovered evidence. The trial court having granted those motions, the People appealed from the order and we determined the appeal to be meritorious. (*People* v. *Taylor* (Apr. 17, 1992) B057914 [nonpub. opn.]) Our disposition of the prior appeal stated: "The order granting defendants' and respondents' motions for new trial is reversed and the cause is remanded to the trial court with directions to enter a new and different order denying said motions, and thereafter to proceed according to law."

After the remittitur was issued to the trial court, defendants filed a second motion for new trial on the ground of insufficiency of the evidence to support the verdicts. The People's opposition addressed the merits of the motion, which was granted on August 14, 1992.

The People filed notice of appeal from the August 14, 1992, order granting the defendants' motion for new trial.

## I

## JURISDICTION AFTER REMITTITUR

Appellant contends that the trial court was without jurisdiction to entertain a second motion for new trial. Respondents assert that appellant waived the issue of the jurisdiction of the trial court to entertain a second motion for new trial by failing to oppose the motion on that ground. ■ However, it is generally recognized that the lack of jurisdiction may be raised as an issue for the first time on appeal. (*People* v. *Young* (1991) 228 Cal.App.3d 171, 179 [278 Cal.Rptr. 784].) We conclude that the issue of the trial court's jurisdiction is properly before us.

"While there may be no legislation proscribing a second motion or an order changing a prior ruling, there are the Supreme Court cases of *In re Levi* [(1952)] 39 Cal.2d 41 [244 P.2d 403] and *People* v. *Martin* [(1926)] 199 Cal. 240 [248 P. 908] out of which developed the long established rule of *Levi/Lindsey* by which we are bound." (*People* v. *Hernandez* (1988) 199 Cal.App.3d 768, 773 [245 Cal.Rptr. 156].)

■ As framed by *Hernandez*, the *Levi/Lindsey* rule provides that "Once a motion for a new trial has been ruled upon in a criminal case and an order made either granting or denying such application . . . the court is without authority to entertain a subsequent motion the object of which is to change or vacate its former order. . . . ( . . . *In re Levi*, 39 Cal.2d 41, 45.) In [*People v. Lindsey* (1969) 275 Cal.App.2d 340 (79 Cal.Rptr. 880)] the trial court granted defendant's motion for new trial at the time set for hearing on probation, and the order was entered in the minutes; two weeks later at the time set for retrial it vacated its previous ruling. The court held that there was no jurisdiction for the trial court to reconsider its ruling so the procedure, including the ruling vacating the previous order, was a nullity." (*People v. Hernandez*, *supra*, 199 Cal.App.3d 768, 771, internal quotation marks omitted.)

It is apparent from the language of *Hernandez* that the *Levi/Lindsey* rule applies to the bringing of a second motion for new trial and not only to the reconsideration of a prior ruling on a new trial motion or the vacation of a prior ruling. We thus reject respondents' argument that the *Levi/Lindsey* rule "can be distinguished from the instant case because [defendants did not seek] review of a previous motion, but rather . . . submitted a second new trial motion on an issue separate and apart from the first motion."

We also reject respondents' attempt to limit *People v. Martin* (1926) 199 Cal. 240 [248 P. 908] to the situation in which the second new trial motion presents the same grounds as the first motion, as this was *not* the fact in *Martin* and no such limitation appears in any language in *Martin*. In *Martin*, a first motion for new trial on "numerous grounds" was denied on March 24; the matter was continued to March 27 for judgment and sentence when defendants presented a new motion for new trial "on substantially the same grounds set forth in the motion which was denied on March 24th, with the additional specification, however, that the jury received evidence out of court." (199 Cal. at p. 241.) After the court received evidence on the additional specification, the court granted the second motion for new trial, from which the People appealed. The Supreme Court agreed with the People's contention that the order granting the second motion for new trial was a nullity: "There is no statutory or other authority for the presentation or consideration of a second motion for new trial under the circumstances here shown. There was no showing that the order denying the first motion was entered prematurely or by inadvertence, as was disclosed in *Robson* v. *Superior Court*, 171 Cal. 588 . . . , nor was there any application for relief or showing pursuant to section 473, Code of Civil Procedure. . . ." (199 Cal. at p. 242.)

We also reject respondents' claim that the *Levi/Lindsey* rule does not prohibit subsequent motions on different grounds, inasmuch as the jurisdictional ban set out in *Martin* was applied in *People v. Coronado* (1943) 57

Cal.App.2d 805, 814 [135 P.2d 647], which involved a first new trial motion based on insufficiency of the evidence and lack of venue and a second new trial motion based on the ground of newly discovered evidence. (*Id.* at p. 813.)

Respondents' reliance on *People* v. *Risenhoover* (1966) 240 Cal.App.2d 233 [49 Cal.Rptr. 526] and *People* v. *Stewart* (1988) 202 Cal.App.3d 759 [248 Cal.Rptr. 907] also is misplaced. In *Risenhoover*, the People appealed from an order vacating a prior order denying a new trial on the issues of guilt and sanity and granting a new trial on such issues; the prior order had granted a new trial only as to penalty. The Court of Appeal rejected the People's argument that the trial court lacked jurisdiction to hear and determine the second new trial motion, concluding the trial court had jurisdiction "because (i) the court retained jurisdiction over the case pending retrial on the issue of penalty, (ii) the Penal Code sections concerning new trials do not specifically forbid a second motion for new trial or an order vacating and changing an order granting or denying a new trial before judgment, (iii) the development of the furcated trial and the repeal of a defendant's right to appeal from an order denying a new trial, make possible the development of adventitious circumstances, as in this case, that can be most expeditiously resolved in the trial court, and (iv) the People have the right to appeal from a second or any other order granting a new trial, as was done in this case." (240 Cal.App.2d at p. 236.)

The reference to "adventitious circumstances" that "can be most expeditiously resolved in the trial court" apparently referred to the fact that the judge who tried the case "stated for the record that reversible error was committed at the trial on the guilt and sanity issues" (240 Cal.App.2d at p. 235), and that since "no review of the conviction could be had as to the issues of guilt and sanity until after the penalty retrial, . . . a retrial of the penalty issue alone would be an idle, wasteful and time-consuming act." (*Ibid.*)

*Risenhoover* is distinguishable on its facts from the instant case. Moreover, as pointed out by the dissenting opinion in *Risenhoover*, the majority opinion does not discuss or even attempt to distinguish the Supreme Court cases of *In re Levi* or *People* v. *Martin* out of which developed the *Levi/Lindsey* rule.

In *People* v. *Stewart, supra,* 202 Cal.App.3d 759, the trial court denied a first new trial motion on the ground the verdict was contrary to the evidence; prior to judgment, defendant obtained new counsel who brought a second motion for new trial on the grounds of ineffectiveness of counsel and error in law in the improper admission of testimony; the trial court granted the

motion on both grounds and an additional ground of newly discovered evidence (202 Cal.App.3d 759, 761) from which order the People appealed. While the court in *Stewart* acknowledged the *Levi/Lindsey* line of cases, it also stated that a ". . . subsequent statutory change eliminated the jurisdictional basis identified in *Martin*," and questioned whether the rule is truly jurisdictional. (202 Cal.App.3d at pp. 762-763.) The court in *Stewart* also found several recognized exceptions to the rule and recognized another exception "where defendant's first motion was brought by his trial counsel on the sole ground of insufficiency of the evidence, and his second motion alleged ineffective representation by that very same counsel." (*Id.* at p. 763.) Concluding that the trial court's determination that the defendant received inadequate representation was not made in conformance with proper principles, the Court of Appeal reversed the order granting a new trial and remanded the matter for a new hearing solely on the issue of ineffectiveness of counsel. *Stewart* is clearly inapplicable to the instant case; respondents did not contend in the trial court that their counsel was ineffective and make no such argument in their briefs on appeal. We conclude that we are bound by the long-established rule of *People* v. *Martin* and *Levi/Lindsey*, respondents fail to establish that this case falls within any exceptions to that rule, and the trial court was without jurisdiction to entertain the second motion for new trial.

In fact, our disposition of the prior appeal directed the trial court to deny the first set of motions for new trial and thereafter to proceed according to law. Instead of complying with our remand order, the trial court, without jurisdiction to do so, entertained the second set of motions for new trial. Although the order of August 14, 1992, must be vacated on the ground of lack of jurisdiction, this court's June 18, 1992, order remanding the cause with directions remains pending before the trial court, which has not yet complied with the order.

## II

### ABUSE OF DISCRETION

Having found that the trial court lacked jurisdiction to entertain the second motion for new trial, we are now compelled to conclude that respondents do not come within the exception set out in *Stewart* based upon the failure of their trial counsel to include the ground of insufficiency of the evidence in their first motion for new trial. This is so because that ground would have been without merit even had it been timely asserted or had the trial court possessed jurisdiction to entertain the second motion for new trial. We now proceed to address the issue of the trial court's grant of the second motion

for new trial. We note that both appellant and respondents address this issue, not in the context of the broader issue of whether this case should come within the exception to the *Levi/Lindsey* rule recognized in *Stewart*, but as a separate issue on appeal.

 "While it is the exclusive province of the jury to find the facts, it is the duty of the trial court to see that this function is intelligently and justly performed, and in the exercise of its supervisory power over the verdict, the court, on motion for new trial, should consider the probative force of the evidence and satisfy itself that the evidence as a whole is sufficient to sustain the verdict. . . . This does not mean, however, that the court should disregard the verdict or that it should decide what result it would have reached if the case had been tried without a jury, but instead that it should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict. . . . [¶] In passing upon a motion for a new trial the judge has very broad discretion and is not bound by conflicts in the evidence, and reviewing courts are reluctant to interfere with a decision granting or denying such a motion unless there is a clear showing of an abuse of discretion." (*People* v. *Robarge* (1953) 41 Cal.2d 628, 633 [262 P.2d 14].)

" 'In the determination of a motion for a new trial, the verdict should be set aside if, in the opinion of the trial court, it is not supported by sufficient evidence; and this is equally true whether there be an absence of evidence or that the evidence received, in the individual judgment of the trial judge, is lacking in probative force to establish the proposition of fact to which it is addressed. This is the meaning of the terms "insufficiency of evidence" (Code Civ. Proc., sec. 657, subd. 6) and ". . . contrary to . . . evidence" (Pen. Code, sec. 1181, subd. 6).' (*Estate of Bainbridge* [(1915) 169 Cal. 166, 169-170 (146 P. 427)].)" (*People* v. *Capps* (1984) 159 Cal.App.3d 546, 552, fn. 5 [205 Cal.Rptr. 898].)

In upholding the trial court's order granting a motion for new trial, it has been recognized that " 'A court may reject the most positive testimony, though the witness be not discredited by direct testimony impeaching him or contradicting his statement. The inherent probability of a statement may deny it all claims to belief.' [Citation.] The judge has the witnesses before him, and . . . 'an equal opportunity with the jury to observe the manner of the witnesses, the character of their testimony, and to judge of their credibility, and to discover their motives; *he, too, ought to be satisfied* that the evidence as a whole was sufficient to sustain the verdict . . . .' " (*People* v. *Knutte* (1896) 111 Cal. 453, 455-456 [44 P. 166], original italics.)

"This discretion is, of course, not arbitrary, but like any other judicial function, is to be exercised under the sanction of the judicial oath; and the

strong presumption being always that it was so exercised, it will require in any case a very clear showing to the contrary to overcome such presumption and enable us to say that the power of the court in that respect was abused." (*People* v. *Knutte, supra,* 111 Cal. at p. 455.)

The following facts are taken from our statement of facts set out in our opinion in the prior appeal in this case. (*People* v. *Taylor* (Apr. 17, 1992) B057914 [nonpub. opn.].)

## A. *Prosecution Case*

On December 27, 1989 about 9 p.m., Andre Marshall and Laura Galvez were standing on the sidewalk at Avalon and 97th Streets talking to friends; they had bought some beer at the liquor store across the street and Marshall had just consumed some of the beer when suddenly he was shot in the head and the stomach; he fell to the ground after he was shot in the stomach; he was also shot in the hand, elbow and shoulder; after the shooting, with his arm around a friend, Marshall walked across the street and then passed out. Marshall did not see who shot him; he did not know either defendant and had no fights with defendant Taylor. Marshall was in the hospital for four or five days after the shooting and was still receiving treatment for his injuries. He admitted that he had a felony conviction for possession of cocaine and that three or four years before the shooting he was a member of the 97th East Coast Crips gang.

Laura Galvez saw the two defendants get out of a white Cadillac parked down the street; they came up to Marshall with guns drawn and fired about eight shots at him; the gun was touching Marshall's face; when they fired the last shot at Marshall, the darker-skinned man, whom she identified as defendant Atlas, said, "This is Main Street, Cuz"; Main Street was a gang; after the shooting, the defendants ran back to the Cadillac, got into the back seat, and were driven away. She had never seen either defendant before the shooting; about 20 minutes after the shooting, she gave police a description of the car and the shooters' clothing and told them that she could identify the shooters if she saw them; the shooter she identified as Atlas had a little beard and Taylor wore a black jacket and a baseball hat.

Shortly after 9:05 p.m. Officer Walker arrived at the scene; Galvez was crying but not hysterical; she did not appear to be under the influence of alcohol or drugs; about 9:30 p.m., he took Galvez to a residence on 98th Street, about four or five blocks from the scene of the shooting, where police had stopped five young Black men in a white Cadillac with dark-tinted windows; officers shined lights on the five men lined up against a wall or

garage; Galvez, who was in the police car about twenty to twenty-five feet from the men, identified the defendants as the shooters; according to Walker, one of the defendants was wearing a "doo-rag" tied tightly around his head; Officer Walker booked defendant Atlas, but the police report did not mention that Atlas wore any headgear.

About 9:30 p.m. Officer Anderson found a white 1977 Cadillac with dark-tinted windows parked at the curb on 98th Street; the driver and owner of the car, later identified as Atlas, looked out the window at Anderson and pulled the car away from the curb; Anderson put on his red lights and followed the Cadillac until it pulled into a driveway one block down the street; there were five men in the car; Taylor was in the right front passenger seat; also in the car were Roy Tisby, Vincent Ross and a juvenile; Anderson asked the men which gang they hang with; Atlas said he was not a gang member; the other four said, "Main Street." Anderson testified that Taylor wore a baseball cap, but that fact was not in the arrest report. Anderson found in the glove compartment of the Cadillac some pictures showing Taylor as a member of the Main Street Crips gang.

Officer Avila, an expert on gangs, testified that the west side of Avalon and 97th Street, where the shooting took place, is Main Street Crips territory.

B. *Defense*

Cassandra Bingham testified on behalf of Taylor, who she admitted is her good friend; about 4:30 p.m. on the day Taylor was arrested, she went to a barbecue at a house in the 300 block of 98th Street; Taylor and Atlas were already there; Taylor never left the barbecue until he was arrested in the car on 98th Street; the car drove a short distance and never turned off 98th Street; Taylor never left her sight from 4:30 until about 9:30 that night; Atlas was in the yard barbecuing the food during that time. Bingham claimed she called the 108th Street police station to talk about this case, but did not know to whom she spoke; she is afraid of the police.

Taylor testified on his own behalf that from about 4 p.m. until he was arrested, he had not left the barbecue; he denied wearing a baseball cap; he had seen Marshall in the neighborhood as long as he (Taylor) had been living there, about 11 years, but Taylor did not know Marshall. At the time of the shooting, he was not a gang member, but before June 1989, when he was shot, he was a member of Main Street. Taylor denied knowing Marshall was a former 98th Street East Coast Crips member.

Atlas testified that he was 26 years old and had lived on 101st Street all his life; the area is part of Q 102 East Coast Crips territory; Q 102 East Coast

Crips is a subset of 97th East Coast Crips to which Marshall belongs; Atlas had gone to school with Marshall and claimed to have known him for 12 years; Atlas denied wearing a "doo-rag" or anything on his head; 1 of the 5 persons in the Cadillac when it was stopped by the police, Vincent Ross, was wearing a cap like a baseball cap and another person in the Cadillac, Roy Tisby, was wearing an old pair of panty hose that was cut off and tied and braided to the top of his head. Atlas denied being in the vicinity of the shooting or having anything to do with the shooting. According to Atlas, he and four others at the barbecue were on their way to a store on 98th and Main Streets; someone asked if he knew where they could get some marijuana; he said that Chris might know about the marijuana and he pulled his car into Chris's driveway; then they were stopped by the police. Atlas denied giving anyone else the keys to his car during the barbecue; the only two people he allows to drive his car are his friends Frederick Boone and Darrell Banks; Taylor was in his presence from about 8 p.m. to the time they were stopped by police. Atlas admitted that in 1985 he had bought a .380 automatic pistol, but testified that he left it in Mississippi.

Booker T. Jones II lived next door to the location of the barbecue; he testified that about 7 p.m. on December 27, three boys were having a barbecue and one of them, he did not know which one, gave him some barbecued chicken.

The jury found both defendants guilty on both counts and the firearm use and great bodily injury special allegations to be true; the jury also found true the following four overt acts: after driving by the victim Marshall, the defendants exited the car which was parked about one-half block from Marshall; the defendants each approached victim Marshall with guns drawn; after the first shot was fired and Marshall fell to the ground, each defendant repeatedly fired shots from his respective gun into Marshall's fallen body, as they each stood immediately over his body; and after they stopped shooting, defendants ran back to the parked car and sped away.

## C. Second Motion for New Trial

After this court reversed an order granting defendants' first set of motions for new trial, based on grounds other than insufficiency of the evidence, we directed the trial court on remand to enter an order denying said motions and thereafter to proceed according to law. The minute order of June 26, 1992, indicates the trial court had received the remittitur and the court set a hearing date for probation and sentence of July 17, 1992.

On July 1, 1992, defendant Taylor, joined by defendant Atlas, moved for new trial on the ground the verdict rendered was contrary to the law and the

'evidence in that the testimony of witness Galvez, the only witness making identifications, was "replete with inconsistencies and retractions" pertaining to her position on the street in relation to Marshall and the liquor store. Defendants also pointed out inconsistencies between her testimony and that of Marshall on the issue of whether Galvez had been drinking and the manner in which Marshall had been shot, and inconsistencies between her testimony and that of the police officer as to the clothing worn by the defendants. Defendants also argued that the identification by Galvez was "unbelievable because when asked whether he (the perpetrator) had a mustache, the witness said she didn't know 'because she didn't pay attention to that area.'"

In granting the motion, the trial court stated that "1. There is no doubt whatsoever that a trial court in passing on a motion for new trial made upon the ground of insufficiency of the evidence to support the verdict, has the power and the duty to vacate the verdict and grant a new trial in every case in which it is of the opinion that a fair and just verdict has not been reached. [¶] 2. If the court entertains a serious doubt as to the credibility of witnesses for the prosecution whose testimony is essential to establish the guilt of the defendant, this power should be exercised and a new trial granted. [¶] 3. The court should not disregard the verdict, nor decide what result it would have reached if the case had been tried without a jury. [¶] 4. The court should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support a verdict. [¶] Before applying these principles to the case before the court, it is necessary to provide a summation of the evidence insofar as it relates to this issue."

The court continued: "Without providing all of the details, the case for the prosecution established the following: [¶] Mr. Marshall was shot as he stood with Ms. Galvez near a public sidewalk. The two perpetrators escaped in a car. Messrs. Atlas and Taylor were identified by the witness Galvez after they had been stopped in a car matching the description of the getaway vehicle. [¶] The defense provided the following: Both defendants testified to an alibi and called two witnesses to verify that alibi. [¶] The court has taken into consideration all of the following: [¶] 1. The credibility of all of the witnesses who have testified; 2. The factors enumerated in CALJIC instruction 2.92 pertaining to identification testimony; 3. Discrepancies between the description given by the eyewitness and the defendants; 4. The facts which corroborate the identification of these two defendants; and 5. The lack of other evidence which would tend to connect these two defendants to the crime and the absence of which tends to disconnect them from the crime."

The court then concluded: "After due consideration of the totality of the evidence and applying the principles previously enumerated, this court

expresses a reasonable doubt as to the sufficiency of the evidence to support a verdict in this case. [¶] Accordingly, the motion for a new trial as to each defendant is granted."

Although we acknowledge that the trial court has broad discretion in granting a motion for new trial, that discretion is "not arbitrary, vague, or fanciful, nor is it to be controlled by humor or caprice, but to be governed by principle and regular procedure for the accomplishment of the ends of right and justice." (*Estate of Bainbridge* (1915) 169 Cal. 166, 169 [146 P. 427].)

■ In this case, the trial court failed to articulate any explanation for its conclusion that there was insufficient credible evidence to support the verdict. Despite an invitation by respondents to do so, the trial court did *not* expressly find Galvez's identification testimony to be unbelievable, and even acknowledged that there were facts which corroborated her eyewitness testimony. The trial court did acknowledge discrepancies between Galvez's testimony and defendants' testimony, but such conflicts do not render her testimony inherently improbable or incredible. Moreover, the trial court failed to articulate any reason, in the exercise of its supervisory power over the verdict, the jury accorded improper weight to Galvez's testimony or did not "intelligently and justly" perform its duty in evaluating the evidence. (*People* v. *Robarge, supra*, 41 Cal.2d 628, 634.)

On the instant record, ample uncontradicted evidence supported Galvez's testimony, including the fact that both Atlas and Taylor were arrested in the vicinity of the shooting within half an hour of the shooting in a car matching that of the shooters; Atlas admitted he had not loaned his car to anyone else. Thus, the only scenario which is *consistent* with Galvez being mistaken in her identification of the shooters and consistent with the defense theory of the case is that there were two similar Cadillacs, both white with dark-tinted windows, being driven in the vicinity at the time of the shooting. The jury impliedly rejected such scenario, and found Galvez's testimony to be credible. The trial court failed to charge the jury with improperly weighing the evidence or determining the credibility of the witnesses.

It is clear to us that in granting the motion, the trial court simply decided what result it would have reached if the case had been tried without a jury. As explained in *Robarge*, the court does not "disregard the verdict or . . . decide what result it would have reached if the case had been tried without a jury, but instead that it should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict." (*People* v. *Robarge, supra,* 41 Cal.2d at p. 633.)

Inasmuch as the motion for new trial failed to set out any proper ground to support an order granting it, and the trial court failed to articulate any basis to support its conclusion that the verdict was not supported by sufficient credible evidence, we can only conclude that the trial court abused its discretion in granting the motion.

 Accordingly, no exception to the *Levi/Lindsey* rule based on ineffectiveness of counsel is established in this case even though counsel did not assert the ground of insufficiency of the evidence in a timely manner; whether asserted in a timely manner or not, the claim is without merit. Even assuming jurisdiction existed in the trial court to entertain the second motion for new trial, we would reverse the trial court's order because our record shows that the trial court abused its discretion in granting it.

## DISPOSITION

The August 14, 1992, order granting defendants' and respondents' motion for new trial is vacated. Our record discloses that the trial judge on remand disregarded the order of this court specifically directing a denial of the motions for new trial heard on December 14, 1990. In light of the disposition of the within appeal, vacating the order of August 14, 1992, for lack of trial court jurisdiction to entertain the motions for new trial, the trial court now has before it on remittitur dated June 18, 1992, this court's order remanding to it the cause with directions to deny the motions for new trial granted December 14, 1990 and proceed according to law, with which remand order the trial court has yet to comply.

Woods (Fred), J., concurred.

**JOHNSON, J.**—I respectfully dissent. Contrary to the majority's holding, this case is not controlled by the *Levi/Lindsey* rule. Rather, it is a case of first impression. For the reasons discussed below, I conclude the trial court had jurisdiction to entertain the second new trial motion. On the merits of granting defendants a new trial, I would defer to the trial court because I do not find a "manifest and unmistakable abuse of discretion" from reviewing the record in this case. (*People* v. *Cox* (1991) 53 Cal.3d 618, 694 [280 Cal.Rptr. 692, 809 P.2d 351].)

## DISCUSSION

I. *The Trial Court Had Jurisdiction to Entertain the Second Motion for New Trial.*

In order to resolve the jurisdictional issue in this case, it is necessary to focus on its unique procedural history.

Following a jury trial, defendants were convicted of attempted murder and conspiracy to commit murder. The jury also found each defendant personally used a firearm and personally inflicted great bodily injury on the victim.

Defendants filed timely motions for new trial based on newly discovered evidence and the trial court's alleged error in disallowing evidence the prosecution's chief witness was on probation. The trial court granted the new trial motions as to both defendants and the People appealed. In a unanimous opinion, we reversed and ordered the trial court to deny the new trial motions and "thereafter to proceed according to law."

After the remittitur issued defendants filed a second motion for new trial. This time the motion was based on the ground the verdict was contrary to the evidence. (Pen. Code, § 1181, subd. 6.) The trial court once again granted defendants' new trial motion and the People once again appeal.

In holding the trial court lacked jurisdiction to entertain this second new trial motion, the majority, in my view, overlooks the significance of this procedural history. Once our remittitur issued in the first appeal, the trial court was reinvested with jurisdiction over the case and the parties were restored to the position they were in prior to the trial court's order which we reversed. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 600, p. 587; 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Appeal, § 3261, p. 4025.) No judgment having been entered, there was no jurisdictional bar to defendants' second motion for new trial. (Pen. Code, § 1182; *People* v. *Stewart* (1988) 202 Cal.App.3d 759, 763 [248 Cal.Rptr. 907].)

The cases relied on by the majority are not on point. In *People* v. *Martin* (1926) 199 Cal. 240, 242 [248 P. 908], the defendants made a motion for new trial which was denied. While the appeal from the denial of that motion was pending[1] defendants made a second motion for new trial which was granted. The Supreme Court reversed the order granting the second new trial motion on two alternative grounds. First, the court noted, when the trial court has already entertained and *denied* a new trial motion there is no statutory or other authority for a second motion for new trial. As an additional reason for reversing the order, the court pointed out an appeal had been taken from the denial of the first motion. "[I]t would follow that [further] new trial proceedings were removed from the jurisdiction of the trial court by the taking of the appeal." (*Ibid.*) The *Levi/Lindsey* rule provides once the trial court *grants* or *denies* a motion for new trial, it generally has no power to change or vacate its former order. (See, e.g., *People* v. *Snyder* (1990) 218 Cal.App.3d 480, 489-490 [266 Cal.Rptr. 915] and cases cited therein.)

---

[1]Penal Code section 1237 formerly allowed an appeal from the denial of a new trial motion.

None of these cases involved the situation in the present case where the first new trial order was *reversed on appeal* and a second motion for new trial on different grounds was filed after remand from the appellate court. Here, unlike *Martin* and *Snyder*, the defendants are not seeking to have the trial court change or vacate its former order. *As a result of our prior decision in this case, the former order no longer existed.* No judgment having been entered, there is no jurisdictional bar to a second motion for new trial.

Ordinarily a second new trial motion would fail, not because the trial court lacked jurisdiction to hear it, but because the ground for the second new trial motion could have been raised in the initial motion and, therefore, is deemed waived. Considerations of fairness and judicial economy weigh heavily against allowing a defendant to raise "interminable" new trial motions. (*Coombs* v. *Hibberd* (1872) 43 Cal. 452, 453; *People* v. *Wisely* (1990) 224 Cal.App.3d 939, 948 [274 Cal.Rptr. 291].)[2]

But waiver can be a two-edged sword and in this case the second edge cuts against the People. In responding to defendants' second new trial motion the People never contended the ground the verdict was contrary to the evidence had been waived by failure to raise it in the initial motion. This waiver argument is raised for the first time on appeal. Thus, we are cited by defendants to another rule of fairness and judicial economy which holds, "An appellate court will ordinarily not consider procedural defects or erroneous rulings in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method." (9 Witkin, Cal. Procedure, *supra*, Appeal, § 311, p. 321.) This rule is usually applied where the contention on appeal raises disputed factual issues (*Menefee* v. *County of Fresno* (1985) 163 Cal.App.3d 1175, 1182 [210 Cal.Rptr. 99]) or where, as here, the alleged error could have been corrected if it had been pointed out the trial court (*Sommer* v. *Martin* (1921) 55 Cal.App. 603, 610 [204 P. 33].)

In the present case, the People should have raised the waiver argument in the trial court. They failed to do so and as a result the defendants' contention the verdict is contrary to the evidence has been fully briefed and argued in the trial court and on appeal. Under these circumstances, in fairness to the

---

[2]Waiver has been found not to apply to a second new trial motion where, prior to judgment, a high court decision makes reversal of the judgment inevitable (*People* v. *Risenhoover* (1966) 240 Cal.App.2d 233, 235 [49 Cal.Rptr. 526]) and where the ground asserted is incompetence of counsel who made the first new trial motion (*People* v. *Stewart*, *supra*, 202 Cal.App.3d at p. 763). Neither of these situations is presented here.

parties and the trial court, we should address the merits of defendants' contention.[3]

## II. *The Trial Court Did Not Abuse Its Discretion in Granting a New Trial on the Ground the Verdict Was Contrary to the Evidence*

An order granting a motion for new trial will not be disturbed on appeal " ' "unless a manifest and unmistakable abuse of discretion clearly appears." ' " (*People* v. *Cox, supra,* 53 Cal.3d at p. 694.) It is beyond doubt the trial court has a duty to grant a new trial in every case in which it is of the opinion a fair and just verdict has not been reached. (*People* v. *Robarge* (1953) 41 Cal.2d 628, 633 [262 P.2d 14].) This does not mean the trial court should disregard the verdict or decide what result it would have reached if the case had been tried without a jury. It does mean the trial court should consider the proper weight to be accorded the evidence and then decide whether, in its opinion, there is sufficient credible evidence to support the verdict. (*People* v. *Serrato* (1973) 9 Cal.3d 753, 761 [109 Cal.Rptr. 65, 512 P.2d 289]; *People* v. *Robarge, supra,* 41 Cal.2d at p. 633.)

In the present case, the prosecution's case depended on the testimony of Laura Galvez, the victim's girlfriend. Her testimony was the focus of the second new trial motion. And, although the court did not single her out by name, it is obvious from the court's reference to "factors enumerated in CALJIC instruction 2.92 pertaining to identification testimony," "discrepancies between the description given by the eyewitness and the defendants" and "facts which corroborate the identification of these two defendants . . . ," the court had a serious doubt about Ms. Galvez's credibility in identifying defendants as the men who shot her boyfriend. "[I]f the court entertains a serious doubt as to the credibility of witnesses for the prosecution whose testimony is essential to establish the guilt of the defendant, . . . a new trial [should be] granted." (*People* v. *Robarge, supra,* 41 Cal.2d at p. 636 (conc. opn. of Carter, J.).)

The question before us is not whether there is sufficient evidence to support the verdict were it to be challenged on appeal (*People* v. *Serrato,*

---

[3]We commented on defendants' failure to raise this contention in our previous decision but in a different context. There, we observed, "[r]espondents do not argue on this appeal that the order granting the motions for new trial can be affirmed on the ground that the verdicts were contrary to the evidence . . . . This ground was waived for failure to raise it in any manner below." In that statement we were referring to the well-settled rule a new trial order can be affirmed on grounds different from those relied upon by the trial court but cannot be affirmed on grounds that were not raised by the moving party. (*People* v. *Montgomery* (1976) 61 Cal.App.3d 718, 729 [132 Cal.Rptr. 558]; *People* v. *Skoff* (1933) 131 Cal.App. 235, 240 [21 P.2d 118].) Our previous decision did not address the question whether, by failing to raise as a ground for new trial the verdict was contrary to the evidence, defendants had waived that ground for purposes of a second new trial motion.

*supra*, 9 Cal.3d at p. 761) but whether in ordering a new trial on the ground the verdict was contrary to the evidence " ' "a manifest and unmistakable abuse of discretion clearly appears." ' " (*People* v. *Cox*, *supra*, 53 Cal.3d at p. 694.) Here, the record adequately supports the trial judge's exercise of discretion.

The record does reflect significant discrepancies in Ms. Galvez's testimony. Ms. Galvez testified defendant Taylor was wearing dark clothing and a baseball cap whereas at the time of his arrest shortly after the shooting Taylor was wearing lime-green pants. More importantly, Ms. Galvez insisted during her direct and cross-examination she had never taken her eyes off the faces of the assailants who were only a few inches from her. However, when asked whether the assailants had beards or mustaches she stated she did not know because she did not pay attention "to this area." There were other discrepancies between her testimony and that of the victim as to where they were standing when the victim was shot; whether they had been drinking earlier in the day; and whether they had been drinking just prior to the shooting.

It is rare for a judge to grant a new trial in a criminal case. It is rarer still for a judge to grant *two* motions for new trial in the same case. The jurist in this case is obviously trying to tell us something and I believe we should be more receptive to his message. The trial judge who listened to the testimony, observed the witnesses and independently weighed the evidence clearly had a serious doubt as to Ms. Galvez's credibility. In addition, the defendants testified they were at a barbecue when the shooting occurred and presented a witness who testified she was with them the entire time. Under these circumstances I cannot say granting a new trial in this action was a manifest and unmistakable abuse of discretion. Therefore, I would affirm the new trial order.

Respondents' petitions for review by the Supreme Court were denied February 2, 1994. Mosk, J., was of the opinion that the petitions should be granted.